STATE EX REL. MAHNKE, Respondent, vs. KABLITZ, Appellant.

*December 7, 1934—February 5, 1935.*

For the appellant there was a brief by *Bassuener & Humke,* attorneys, and *John M. Poole* of counsel, all of Sheboygan, and oral argument by *H. S. Humke.*

For the respondent there was a brief by *Charles A. Copp,* district attorney of Sheboygan county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Copp* and *Mr. Messerschmidt.*

FAIRCHILD, J.   The first question involved is whether under any circumstances the state is entitled to a new trial in a bastardy action.   At the outset it should be said that the answer to this question depends, not upon what name be given to the action, but whether the defendant in bastardy proceedings is charged with or prosecuted for a crime. Both the federal and state constitutions provide that no person for the same offense shall be put twice in jeopardy of punishment.   Selections at random from the state and federal constitutions, dealing with the rights of those accused of crime, are as follows: "No person shall be held to answer for a capital, or otherwise infamous crime, . . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."   Art. V, Amendm. U. S. Const. "No person shall be held to answer for a criminal offense without due process of law, and no person for the same offense shall be put twice in jeopardy of punishment." Sec. 8, art. I, Wis. Const.   These constitutional provisions are concerned solely with the rights and immunities of persons accused of crime.   It is this fact that arouses the operation of the protective features of the constitution, and not the form of the action to which defendant is subjected.   Cer-

tainly a defendant in bastardy proceedings is not being prosecuted for a crime. True, the action is criminal in form, and the procedure in many respects follows that enforced in prosecutions for crime. Thus it has been held that bastardy proceedings can be brought to the supreme court for review by writ of error only, and that the accused must be proved guilty beyond a reasonable doubt. *Windahl v. State,* 189 Wis. 424, 207 N. W. 694. The rules of taxation and costs in such actions are the same as in criminal proceedings, so likewise are the rules of evidence. *Windahl v. State, supra.* In the latter case, where defendant offered to prove his reputation, and the trial court declined until such time as his character was first impeached as a witness, it was held that since the proceedings were criminal in form, defendant might introduce evidence of good character without having first been impeached as a witness. On the other hand, this court has taken the position that the proceedings, being purely statutory, are *sui generis. State v. Jager,* 19 Wis. \*235, 251; *Smith v. State,* 146 Wis. 111, 130 N. W. 894. The proceeding has been called a mere *quasi*-criminal proceeding, *Jerdee v. State,* 36 Wis. 170; *State v. Mushied,* 12 Wis. \*561, 625; *State v. Jager, supra.* And it has been said that it cannot be classed either with criminal or civil cases. *Goyke v. State,* 136 Wis. 557, 117 N. W. 1027, 1126; *Meyer v. Meyer,* 123 Wis. 538, 102 N. W. 52. It has been squarely held in *Baker v. State,* 65 Wis. 50, 26 N. W. 167, that a bastardy proceeding is neither a criminal prosecution, an indictment, nor information within the meaning of secs. 7 and 8, art. I, Const. In *Goyke v. State, supra,* it was said:

"It has characteristics of both, and as to such as are similar to those of criminal actions the rules and practice therein are applicable, and as to such as are the same or similar to those of civil actions the rules and practice therein are applicable."

It has been held that while in a criminal prosecution a sealed verdict cannot be amended or changed after the jury has separated, the rule in bastardy proceedings is the same as that in civil actions. *Goyke v. State, supra; State ex rel. Volkman v. Waltermath,* 162 Wis. 602, 156 N. W. 946. In *Baker v. State, supra,* where defendant failed and refused to appear and defend, it was held proper to try the action and to submit the cause to the jury, in his absence. It was held in *State v. Jager, supra,* where there was certified an illegitimacy proceeding to this court under statutory provisions for the certification to this court of exceptions taken by any person convicted of an offense before the circuit court, that the statute would not apply to an illegitimacy proceeding but only to purely criminal causes. In *Smith v. State, supra,* where private counsel had prosecuted a bastardy proceeding after the enactment of sec. 166.08, Stats., making it the duty of the district attorney to appear and prosecute illegitimacy proceedings, it was held that the practice was proper.

It is not to be denied that the hybrid character of the proceedings has created confusion and difficulty. The trial of a bastardy action in many important respects is governed by procedural rules more favorable to the defendant than those applicable to civil actions. This is doubtless because, while not a criminal prosecution, the action is based upon a criminal act and one involving sufficient moral turpitude to subject defendant to a loss of reputation if established. The action involves a serious charge and one that is easier to make than to meet. In other civil actions involving fraud or crime as an essential part of the cause of action, the law of procedure has required a degree of proof greater than that required in ordinary civil actions. Upon much the same principle, it has applied rules of criminal procedure to bastardy cases. This does not make bastardy a criminal prosecution or a criminal action. While it has been termed a *quasi*-criminal action, this designation is extremely misleading unless treated as

merely descriptive of the procedure in the action. Actions are defined by the code as civil and criminal. There is no such action as a *quasi*-criminal action. We have no disposition to disturb the rules of criminal procedure as they have heretofore been applied to bastardy actions. However, the adoption of such rules cannot make the action criminal in character when in fact it does not constitute a prosecution for crime. The proceeding is a civil action and the state is entitled to a new trial upon a proper showing. A new trial cannot be granted in a criminal action because of the constitutional prohibition against double jeopardy. No such barrier to a new trial exists in a bastardy proceeding.

However, because of the criminal procedure held applicable to bastardy actions, it is evident that the discretion of the trial court to grant a new trial is measurably limited. The defendant must be found guilty beyond a reasonable doubt, and that degree of certainty must be the standard used in treating with a motion for a new trial on the part of the plaintiff. A verdict of·acquittal cannot be set aside merely because it is against the preponderance of the evidence. Hence, if this order depends for its validity upon such a finding by the trial court, it cannot be sustained. But the order purports to be made in the interests of justice. If it is such an order, the limited character of our review has been so frequently defined as to require little exposition here. The sole question is whether the trial court, under a misapplication of the law, found the verdict to be against the preponderance of the evidence, and for that reason set aside the verdict in the interest of justice. It is apparent that the trial court had in mind the true rule for measuring the evidence in cases of this character. In the charge to the jury the court said:

"The defendant is not obliged to prove his innocence. The law presumes that he is innocent, and this presumption of innocence which the law raises in his favor prevails through-

out the trial and at its close, and is alone sufficient to entitle the defendant to an acquittal unless it is overcome by testimony which satisfies the jury that he is guilty beyond a reasonable doubt."

While the memorandum filed by the trial court is largely devoted to the question of whether the verdict is against the weight of the evidence, we are of the opinion that the phrase used was descriptive of the estimate of the court after weighing the evidence with the correct rule in mind and in determining that the interests of justice require a new trial. The court commented upon the conduct of the complaining witness and her parents which he appears to believe might have prejudiced the jury against the state's case. The memorandum decision concluded with a statement to the effect that the court was of the opinion "that the verdict is plainly against the evidence and that the interests of justice require that the verdict be set aside and a new trial ordered." We conclude that it was the court's intention to grant the order for a new trial in the interests of justice; and we hold that there was no abuse of discretion. *McCoy v. Terhorst,* 188 Wis. 512, 205 N. W. 420.

*By the Court.*—Order affirmed, and cause remanded for further proceedings according to law.

WICKHEM, J. (*dissenting*). I dissent solely from that portion of the opinion of the court sustaining the trial court's order as one made in the interests of justice. While in terms the order purports to be one made in the interests of justice, it is clear to me from an examination of the trial court's memorandum that the order granting a new trial was based upon a conclusion that the verdict was against the preponderance of the evidence, and that it proceeded from an erroneous view of the law. The memorandum is almost entirely devoted to a discussion of the question whether the verdict is against the preponderance of the evidence,—a wholly im-

material question. Fairly construed, I think the trial court's conclusion was that since the verdict was against the great weight of the evidence, a new trial should be granted in the interests of justice. Where an order purporting to rest upon the court's power to grant a new trial in the interests of justice is grounded upon an erroneous view of the law, the order should fall when the reasons for it are perceived to be erroneous or insufficient. That is the situation in this case, as I view the matter.

I am authorized to state that Mr. Chief Justice ROSEN-BERRY and Mr. Justice NELSON concur in this dissent.