RAY, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 10—April 11, 1939.*

*James Murray* of Fond du Lac, for the plaintiff in error. For the defendant in error there was a brief by *George M. St. Peter,* district attorney of Fond du Lac county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney

general, and oral argument by *Mr. St. Peter* and *Mr. Messerschmidt*.

MARTIN, J. The first, second, and third assignments of error are without merit. The fourth assignment challenges the sufficiency of the evidence to sustain a finding of guilt beyond a reasonable doubt, which is the test to be applied. *Schuh v. State,* 221 Wis. 180, 266 N. W. 234, and cases cited. We cannot say as a matter of law that the verdict is not supported by any credible evidence. While there are circumstances connected with the case which cast considerable suspicion upon the testimony of the complaining witness, particularly her denial of relations with other men, she testified as to having had relations with the defendant during April, May, June, and July, 1937; that her last relations with the defendant were in July, sometime during the last week of said month; that her last menstrual period was in July; that the child was born on April 2, 1938. The attending physician at the birth of the child testified that it was fully developed at birth. He further testified that ordinarily there is a lapse between the time of conception and the time of birth of two hundred eighty days, but that it is not unusual to have a variation of two or three weeks either one way or the other. The complaining witness was eighteen years of age on September 9, 1937. Defendant, who at the time was twenty-four years of age, had been acquainted with the complaining witness for about six years, and admits having called at her home to see her upon several occasions. A Miss Burnett, who was engaged in child-welfare work in Fond du Lac, which work included investigating the paternity of illegitimate children, testified to a certain conversation she had with defendant after his arrest. She testified:

"I asked him if he had been with Esther Hebert, and he said yes, he had been. And I asked him when, and he said that he couldn't just remember, but that he had been with her

he knew in April and May. And I asked him how he happened to meet her, and he said he picked her up off the street when he was working for the postal delivery."

She was asked:

"Q. Did he say approximately how many times he picked her up on the street and taking her some place or another? A. He said five or six. He told me at the same time that his defense was not guilty because he believed that she was an easy pick up."

Upon her cross-examination the complaining witness testified:

"Q. Now, then after this baby was born in April, 1938, you made up your mind or somebody told you that you had to figure back about two hundred seventy days or nine months and that made you think you had better say that the defendant had intercourse with you sometime in July. Wasn't that it? A. Well, yes.

"Q. What is that? A. Yes.

"Q. Well, you haven't any way of knowing that you had intercourse with him, or claim to have had intercourse in July of 1937 outside of the baby being born, and you subtracted about nine months, or about two hundred seventy days, isn't that true? A. Well, the only way I can accuse him of being the father is by looking at the baby. The baby is the picture of him.

"Q. The baby is the picture of him, and how old is the baby? A. The baby is a month old.

"Q. And when did you discover first that the baby was a picture of him? A. Well, when my mother came to the hospital she told me right away that the baby looked like him, and I can see it now.

"Q. And that is what made you think that he was the father of the child? Is that it? A. Well, mostly, yes."

This testimony materially weakens the testimony given upon her direct examination in response to questions by the district attorney, but in view of all her testimony, it is clear that she had other good reasons for accusing the defendant of being the father of her illegitimate child, aside from the child's resemblance to the defendant. From all the testimony

there can be no doubt as to Esther being a wayward girl. The record discloses four instances of other cases in which she was involved in juvenile court proceedings in Fond du Lac. The trial court properly excluded defendant from showing the nature of the proceedings in the juvenile court. (Sec. 48.07 (3), Stats.)

In *Cleaveland v. State,* 211 Wis. 565, 568, 248 N. W. 408, which was a statutory rape case, this court held that a person may be convicted of rape on the uncorroborated testimony of a prosecutrix if the jury is satisfied as to the truth of her testimony beyond a reasonable doubt, but the court said at page 568:

"All courts recognize the obvious danger of convicting [in such cases] on such uncorroborated testimony."

An illegitimacy proceeding is a civil action. *State ex rel. Mahnke v. Kablitz,* 217 Wis. 231, 258 N. W. 840, and cases cited. However, the defendant in such action must be found guilty beyond a reasonable doubt.

In the instant case, the birth of the child fully developed on April 2, 1938, is consistent with conception on or about July 23, 1937. Upon the trial defendant attempted to establish the fact that the complaining witness had had intercourse with other men at a time when it made it impossible for her to say who was the father of the child, but there is no evidence of such fact. There is no evidence in the record to enable the court to say that a reasonable doubt exists as a matter of law. Upon all the evidence it was a question of fact for the jury.

Defendant contends that the court erred in refusing to set aside the verdict and grant a new trial on newly discovered evidence. In this connection defendant filed three affidavits, an affidavit made by himself, one by Mildred Funk, and one by John Southrad. The only material part of defendant's affidavit is to the effect that he and his parents had arranged for one Mildred Funk to attend the trial as a witness for the defense, had caused a subpœna to be issued for her attend-

ance, and that a subpœna was in fact issued and placed in the hands of an officer for service; that said Mildred Funk left the city of Fond du Lac, was not served with the subpœna, and did not attend the trial.

Mildred Funk makes affidavit bearing date of May 23, 1938. (Case was tried on May 18, 1938.) From her affidavit it appears that she is eighteen years of age, has been married and divorced; that she lives in Fond du Lac and has been acquainted with Esther Hebert for about one year; that she is acquainted with the defendant and has known him for some years; that on Monday, May 16, 1938, she called at the office of James Murray (defendant's attorney), and among other things told said Murray that during the month of July, 1937, she and Esther Hebert were together for five days; that they met in the city of Fond du Lac and spent the entire five days (with the exception of when in Milwaukee and on their way to and from Milwaukee) on streets and in parks, taverns, roadhouses, and rooming houses in the city and county of Fond du Lac; that Esther Hebert associated with different men in different places; that they both had different men at different times; that the couples at times separated and later met again; that on one occasion, during said five-day period, the two girls accompanied two strange men to the city of Milwaukee; that they left Fond du Lac about midnight, drove to Milwaukee, had lunch, stayed there about two hours, and then returned to Fond du Lac, arriving in Fond du Lac between 9 and 10 o'clock the following forenoon; that thereafter, they stayed together in Fond du Lac, frequented taverns, associated with men in taverns and elsewhere; that during the five days both girls picked up sufficient money in the taverns from men to pay their expenses for food, drinks, cigarettes, and rooms; that at the time of her conference with said Murray, she did not tell him she was going to leave the city; that she gave Mr. Murray her address and telephone number; that after her conference with

Mr. Murray, she left the city of Fond du Lac for Milwaukee, and that she was not in Fond du Lac on the day of the trial.

Upon the trial Miss Hebert denied associating with the Funk girl, and denied going with her to Milwaukee in company with two strange men.

The only material part of John Southrad's affidavit is to the effect that he was in court on the day of the trial, heard Esther Hebert testify that she wasn't acquainted with Mildred Funk; that he knows the contrary to be so because during the time Mildred Funk worked at his home in the city of Fond du Lac, Esther Hebert visited with her at his home; that he saw them go out together, and heard Esther and Mildred talking about being in Milwaukee together; that subsequent to the trial of this action he gave the above information to Mr. Murray, and made his affidavit at the request of Mr. Murray. He further states that he is not acquainted with the defendant, had never seen the defendant or defendant's parents until the day of the trial of the action in municipal court.

Granting of a new trial upon the ground of newly discovered evidence is a matter resting in the sound discretion of the trial court. *Jacobsen v. State,* 205 Wis. 304, 307, 237 N. W. 142, and cases cited. In denying defendant's motion for a new trial upon the ground of newly discovered evidence, the trial court said:

"This court believes that the newly discovered evidence offered and the circumstances under which it is claimed to have been discovered do not come within the rules of law relating to the granting of new trials on the ground of newly discovered evidence. The evidence offered which is claimed to be newly discovered (I am referring to the evidence of Mildred Funk) as set forth in her affidavit on file herein was known to the defendant prior to the trial."

It should be noted that in the affidavit of the Funk girl, she does not state that she told defendant's counsel she would attend the trial or that she would be a witness for the defense.

The defendant, in his affidavit, does not state that the Funk girl promised to be a witness in his behalf at the trial. There is, in the record, a subpœna which was issued by the clerk of the municipal court, on the 18th day of May, 1938, the date of the trial. Among other names mentioned in this subpœna is that of Mildred Funk. The officer's return shows that he received said subpœna on the 18th day of May, at about 11:30 a. m. The return states that the officer "made an effort to serve same on Mildred Funk and was unable to locate her after due diligence used."

While the defendant and his attorney knew in advance of the trial what the Funk girl would testify to, the showing in that regard on defendant's motion for a new trial upon the ground of newly discovered evidence may not strictly comply with the rules of law applicable as to her evidence being newly discovered, nor with the rule applicable as to due diligence upon the part of the defendant and his attorney. However, we think it might fairly be said that both defendant and his counsel under the circumstances were led to believe that the Funk girl would attend and testify on defendant's behalf at the trial,—at least, that she would be available and subject to subpœna. It is quite probable that the jury would have reached a different verdict had the Funk girl testified as indicated. While we recognize the discretion which the law vests in the trial court as to granting such motions, we are of the view that a new trial should have been granted in the instant case, and after a careful examination of all the evidence and the affidavits filed with the court upon the motion for a new trial upon the ground of newly discovered evidence, we reach the conclusion that this court should exercise the power conferred upon it by sec. 251.09, Stats., and reverse the judgment and grant a new trial in the interests of justice. *Jacobsen v. State, supra.*

Since there must be a new trial of this action, we wish to call counsel's attention to the form of the judgment which

was entered as set out in the statement preceding the opinion. While no question was raised on this appeal as to the form of the judgment, we wish to remind counsel that the purported judgment is not in form as provided in sec. 166.11, Stats. This section, so far as here material, provides:

"(1) If the accused shall be found guilty, or shall admit the truth of the allegation, or shall have entered into a settlement agreement, he shall be adjudged to be the father of such child, unless paternity shall have been denied in such settlement agreement, and shall be ordered to pay to the mother or town or county all expenses incurred by them for lying-in and attendance of the mother during the last six months of pregnancy and also for the care and support of the child, including funeral expenses if child be dead at the time of trial, from the time of its birth until the date of the entry of judgment, and to pay to the county the costs of the action and to stand chargeable for the future support of the child until it shall attain the age of sixteen years."

This statute also provides the method of payment for future support: (a) Payment of a specified monthly sum until the child is sixteen years of age; (b) payment of a specified lump sum within sixty days after entry of judgment or in specified monthly instalments subject to the condition that upon default in any instalment the entire amount shall become due and payable.

*By the Court.*—Judgment reversed, and record remanded with directions to grant a new trial.