IN MATTER OF SHEILA GRANT: SHEILA GRANT, Appellant, v. STATE, Respondent.

*No. 75–865. Submitted on briefs February 8, 1978.—*
*Decided April 5, 1978.*
(Also reported in 264 N. W. 2d 587.)

For the appellant the cause was submitted on the briefs of *Janine P. Geske,* Legal Aid Society of Milwaukee.

For the respondent the cause was submitted on the brief of *Robert P. Russell,* corporation counsel, and *Anthony J. Caronna,* assistant corporation counsel.

CALLOW, J. The issue in this case is whether in a statutory paternity proceeding the mother of an illegitimate child may refuse to testify on the grounds that her answers may incriminate her.

In May, 1974, the Milwaukee County corporation counsel obtained an order for an examination of Sheila Grant in county court concerning the paternity of her child. This examination is authorized by sec. 52.24, Stats., which provides that "[i]f any woman bears a child out of wedlock which is or is likely to become a

public charge," and if the corporation counsel[1] believes it to be in the best interests of the child, he shall apply to any court which "shall thereupon examine such woman on oath respecting the father of such child, the time when and the place where such child was begotten and such other circumstances as he deems necessary; . . . ."

During the examination, the Milwaukee corporation counsel asked her: "The law presumes you became pregnant sometime between July 13th and September 11, 1972, during that period of time, with whom, if with any man did you have sexual intercourse?" Sheila Grant responded: "I refuse to answer on the grounds that it might tend to incriminate me." The court cleared the courtroom of all uninterested persons;[2] and after hearing oral argument, the court ruled that Sheila Grant did not have a privilege against self-incrimination in a statutory paternity proceeding. The court ordered her to answer; and when she did not, the court found her in contempt of court and sentenced her to imprisonment of ten days in the county jail, or until such time as she expressed a willingness to answer the corporation counsel's question. The court stayed this sentence pending appeal.

In adjudging Sheila Grant in contempt, the county court reasoned that Sheila Grant's testimony concerning her sexual intercourse during the period of possible conception would have provided no more incriminating information than was already available to the state by reason of the birth of an illegitimate child. The court stated that in its opinion immunity could have been ar-

[1] In every county but Milwaukee County, sec. 52.24, Stats., authorizes the district attorney to apply for an examination of any woman who bears a child out of wedlock that is likely to become a public charge. Under sec. 52.22, Stats., the corporation counsel has this power in Milwaukee County.

[2] There is no statutory authority for clearing the courtroom at this stage of the paternity proceedings.

ranged. Finally, the court concluded that the statutory restrictions on access to testimony given in a sec. 52.24 examination obviated the assertion of the privilege.[3]

We cannot affirm the county court's analysis of Sheila Grant's constitutional claim. We hold that, in refusing to reveal the identity of a partner to sexual intercourse during the period of conception, Sheila Grant appropriately asserted her privilege against self-incrimination. We hold further that neither the restrictions on access to this testimony nor the immunity statutes provide a basis for compelling her to testify when she asserted her privilege concerning incriminating testimony.

The right against self-incrimination is a fundamental right guaranteed by both art. I, sec. 8, Wis. Const., and by the U. S. Const., amend. V, which is made applicable to the states by reason of the due process clause of the fourteenth amendment. *Malloy v. Hogan,* 378 U.S. 1 (1964); *Wolke v. Fleming,* 24 Wis.2d 606, 617, 129 N.W.2d 841 (1964), *cert. denied,* 380 U.S. 912 (1965). The fact that a paternity proceeding authorized by Ch. 52, Stats., is characterized as civil[4] has no bearing on whether a witness in such a proceeding has a privilege against self-

---

[3] Sec. 52.42, Stats., provides that records of court proceedings held under sec. 52.24, Stats., shall be withheld from persons other than the parties in interest and their attorneys except upon order of the court.

[4] Sec. 52.45, Stats., provides that an examination under sec. 52.24, Stats., is a civil special proceeding. *See also: State ex rel. Sowle v. Brittich,* 7 Wis.2d 353, 96 N.W.2d 337 (1959), (holding that a paternity suit is not a criminal case to which the rule against ex post facto prosecution applies); *State ex rel. Mahnke v. Kablitz,* 217 Wis. 231, 258 N.W. 840 (1935) (holding that a paternity proceeding is a civil action, not a criminal action, within the fifth amendment prohibition against double jeopardy); *Baker v. State,* 56 Wis. 568, 14 N.W. 718 (1883) (holding that paternity proceedings are neither civil nor criminal but quasi-criminal such that a circuit court cannot change the place of trial).

incrimination. The privilege extends to all court proceedings, civil and criminal. *Kastigar v. United States,* 406 U.S. 441, 444 (1972) ; *In Re Gault,* 387 U.S. 1, 44 (1967). The privilege against self-incrimination exists whenever a witness has a real and appreciable apprehension that the information requested could be used against him in a criminal proceeding. *Murphy v. Waterfront Commission of New York Harbor,* 378 U.S. 52, 94 (1964) ; *Mason v. United States,* 244 U.S. 362, 366 (1917) ; *Blau v. United States,* 340 U.S. 159, 161 (1950). It extends not only to testimony which would support a conviction but also to evidence which would furnish a link in a chain of evidence necessary to prosecution. *Hoffman v. United States,* 341 U.S. 479, 486 (1951).

Sheila Grant contends that testifying concerning a specific occasion of sexual intercourse could elicit information which could be used against her in a prosecution for any one of several crimes contained in Ch. 944, Stats., crimes against sexual morality. The corporation counsel does not deny that admissions of sexual intercourse and cohabitation out of wedlock are incriminating. Indeed, it is evident that they are. *See: United States v. Matlock,* 415 U.S. 164 (1974) (because cohabitation out of wedlock is a crime in Wisconsin, statements admitting cohabitation out of wedlock are against the declarant's penal interest) ; *Poplowski v. State ex rel. Lewandowski,* 194 Wis. 385, 216 N.W. 488 (1927) (in a paternity proceeding the trial court's right, if not its duty, was to instruct the witness of his right not to answer a question intended to elicit an admission of sexual intercourse with the prosecutrix) ; *See also: State v. Robbins,* 318 A.2d 51 (Me. 1974) ; *Commonwealth v. Carrera,* 424 Pa. 551, 227 A.2d 627 (1967). But Milwaukee County does argue that: (1) because few if any prosecutions under Ch. 944, Stats., are based on information obtained from paternity suits; and (2) because of the restrictions on access to the

testimony, the likelihood of prosecution is too remote to give rise to the privilege.

The fear of self-incrimination must be "real and appreciable," "not merely [an] imaginary possibility of danger." *Mason v. United States, supra.* This danger should be appraised "with reference to the ordinary operation of law in the ordinary course of things—not a danger of an imaginary or unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct." *Id.* at 366. *Accord: Blau v. United States, supra.* In *Mason v. United States, supra,* the Supreme Court determined that plaintiff Mason's fear of incrimination was too remote when he refused to answer questions about the existence of card playing at a table at which he was sitting because there was no allegation that card playing was criminal in the state, unless gambling was involved. *Id.* at 367.

In *Zicarelli v. New Jersey Investigation Commission,* 406 U.S. 472 (1972), the Court held that Zicarelli's fear of prosecution under foreign law was too remote because it was obvious from the questioning context that the question referred to strictly domestic matters for which Zicarelli had already been granted full immunity. Thus the Court has been cautious in finding the possibility of incrimination too remote to support a reasonable fear unless the fears were clearly far-fetched and imaginary. The Court has instead liberally construed the privilege in favor of the right which it was intended to protect. *Hoffman v. United States, supra* at 486. In *Hoffman,* the Court stated:

"To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question . . . might be dangerous because injurious disclosure could result." *Id.* at 486–87.

In the present case it is clear that Sheila Grant's testimony concerning specific occasions of sexual intercourse would admit critical elements of a crime. Most if not all of Ch. 944, Stats., crimes require the state to name the defendant's victim or partner in the crime. Thus evidence of the child's birth alone would have been insufficient to support a criminal charge. But by supplying the names of a partner to sexual intercourse during the period of conception, Sheila Grant would have furnished evidence of most if not all of the elements of several Ch. 944 crimes and under *Hoffman v. United States, supra,* would have furnished a link in a chain of evidence necessary for prosecution. Despite the fact that it may be less than probable that Sheila Grant will be prosecuted with evidence compelled in a sec. 52.24, Stats., proceeding, her fear of self-incrimination is sufficiently real and appreciable to be a valid exercise of her right.[5]

The corporation counsel also contends that restrictions on access to Sheila Grant's testimony afford sufficient protection from criminal prosecution. Under sec. 52.27, Stats., the court may exclude the public from the preliminary examination. Under sec. 52.35, Stats., the court may exclude the public from trial. Under sec. 52.42, Stats., "All records of court proceedings in cases under ss. 52.21 to 52.45 shall be withheld from inspection by, and copies shall not be furnished to, persons other than

---

[5] *Cf., Burdick v. Miech,* 385 F. Supp. 927 (E.D. Wis. 1974), where the mother of an illegitimate child sought to enjoin enforcement of sec. 52.24, Stats., on self-incrimination grounds, among others. The federal district court acknowledged the existence of a possible privilege against self-incrimination, but the court refused to issue a temporary restraining order because the issue was not yet ripe for adjudication. In *Burdick* the federal court suggested that a grant of immunity to supplant this privilege was available, but we hold to the contrary here. *See:* discussion, *infra.*

the parties in interest and their attorneys except upon order of the court."

The corporation counsel points out that in Milwaukee County, where the corporation counsel and not the district attorney handles paternity proceedings, the district attorney would not be a party in interest and hence would have no access to the court records. But in most areas of Wisconsin the district attorney *does* handle paternity cases, *would have* complete access to the records of court proceedings, and *is* the prosecutor of Ch. 944, Stats., violations. Even in Milwaukee County, however, there is nothing in the statute to prevent the district attorney from obtaining the information from the corporation counsel. Furthermore, since sec. 52.42, Stats., allows release of the records upon court order, the district attorney may be able to obtain the records by court order.

A distinction must be made between restrictions on access which protect the individual's privacy interest and restrictions which protect the individual from criminal prosecution. In this case it appears that the restrictions contained in secs. 52.27, 52.35, and 52.42, Stats., are intended to protect privacy rather than to grant immunity from criminal prosecution. These statutes apply equally to the privacy of the mother of the illegitimate child as well as the privacy of the putative father, yet the putative father has been expressly held to have a privilege against self-incrimination in paternity cases. *Poplowski v. State ex rel. Lewandowski, supra;* Holz, *The Trial of a Paternity Case,* 50 Marq. L. Rev. 450, 455 (1967). Moreover, in other instances involving the adjudication of paternity and parental rights and responsibilities, the legislature has directly dealt with the problem of self-incriminatory testimony. *See, e.g., sec.* 52.10 (21), Stats., authorizing immunity under the revised Uniform Reciprocal Enforcement of Support Act; the Uniform

Desertion and Nonsupport Act, sec. 52.05 (6), Stats., where the statutory language clearly refers to the possibility of incriminating evidence by stating that "neither [the husband nor the wife] shall be compelled to give evidence incriminating himself or herself." The fact that other statutes address the incrimination issue directly suggests that the restrictions on access to testimony under secs. 52.27, 52.35, and 52.42, Stats., secure only the individual's privacy interest.

In ruling that appellant did not have a privilege against self-incrimination, the court below relied on *In Re Cager*, 251 Md. 473, 248 A.2d 384 (1968). In *In Re Cager* the Maryland Court of Appeals ruled that the state attorney could not use information obtained from the state department of public welfare in a child neglect prosecution. The *Cager Case* differs from the facts of the present case in two significant ways. First, the *Cager Case* raised no fifth amendment issue. Since none of the defendants had refused to provide information to the welfare department and asserted a fifth amendment privilege, the question of whether the state could compel the defendants to provide incriminating evidence never arose. Second, the Maryland statute, under which the state had obtained the information, differs from sec. 52.24, Stats., in that it expressly restricts the use of the information.[6] By contrast, secs. 52.21–52.45, Stats., do not contain a use restriction on information obtained under sec. 52.24, Stats.; they merely provide access

---

[6] In *Kastigar v. United States, supra* at 449, the United States Supreme Court held that complete transactional immunity was not required to supplant a privilege against self-incrimination. Instead, the Court held that use and fruits immunity was broad enough to supplant the constitutional right. It could be argued that even the Maryland statute did not supplant the constitutional right if an unwed mother had refused to provide the requested incriminatory information because the statute did not guard against the use of derivative information, "fruits," in a criminal prosecution.

restrictions. Once a district attorney obtains access, through direct inquiry under sec. 52.24 or a court order under sec. 52.42, Stats., he is not prohibited by the statutes from using the testimony itself or other evidence derived from the testimony in a criminal prosecution. Thus the privacy restrictions in Ch. 52, Stats., cannot substitute for a grant of immunity and do not make the danger of prosecution so remote that the privilege cannot be asserted.[7]

---

[7] The corporation counsel argues that sec. 49.53(1), Stats., 1973, affords Sheila Grant protection from criminal prosecution. Sec. 49.53(1) states that: "Except as provided under sub. (2), no person may use or disclose information concerning applicants and recipients of aid to families with dependent children, social services under s. 49.01, or supplemental payments under s. 49.177, for any purpose not connected with the administration of the programs. Any person violating this subsection may be fined not less than $25 nor more than $500 or imprisoned in the county jail not less than 10 days nor more than one year or both." This statute is of no avail to the corporation counsel because it does not cover testimony elicited under sec. 52.24, Stats.

However, sec. 49.53(1), Stats., 1973, has since been amended to restrict access to information concerning the program to establish paternity under sec. 46.25, Stats. Ch. 82, Laws of 1975. In addition, sec. 46.25 has been created, which establishes a child support and establishment of paternity program in the department of health and social services. The stated purpose of this program is to establish paternity when possible and enforce the support obligations owed by absent parents to their children. Sec. 46.25 authorizes officials of the department to obtain information from other state agencies to accomplish the purposes of the program and provides further that information from other state agencies may be obtained only upon an assurance by program officials that the information will be used solely in connection with their official duties under the child support and establishment of paternity program. Under sec. 46.25 testimony given in a sec. 52.24, Stats., examination may be given to the establishment of paternity program. Sec. 46.25 protects this testimony from release *by program officials*. It does not insure that the district attorney cannot obtain the same testimony by other means. Thus even the protection afforded by secs. 46.25 and 49.53(1), as recently amended, will not substitute for a grant of immunity from prosecution.

The corporation counsel argues that, in deciding whether Sheila Grant was entitled to refuse to answer questions concerning the paternity of her child, this court should balance the state's interest in the information against the individual's privilege against self-incrimination. In cases where a state, by statute or rule, requires the disclosure of certain information, the United States Supreme Court requires closer scrutiny of a citizen's refusal to comply with the law on fifth amendment grounds. *California v. Byers,* 402 U.S. 424 (1971); *United States v. Freed,* 401 U.S. 601 (1971); *Garner v. United States,* 424 U.S. 648 (1976). In these cases the Court has recognized that, whenever a citizen is compelled to report information for such noncriminal purposes as income taxation, gun registration, etc., there is a real possibility that the information could be used as evidence leading to a criminal prosecution and conviction. *California v. Byers, supra* at 428. Nonetheless, such disclosure statutes often represent a substantial state interest in the information to be disclosed. In these circumstances a balance must be struck between the individual's right to protection from self-incrimination and the state's interest in information which serves an important public purpose. *California v. Byers, supra* at 427. Therefore where the disclosure of information is mandated, not by the state's power to compel testimony in a judicial proceeding, but by some state reporting law, the test is not whether the danger is "real and appreciable," and "not merely [an] imaginary possibility of danger," but whether a substantial hazard of self-incrimination exists. *Id.* at 429.

However, sec. 52.24, Stats., does not explicitly require the reporting or disclosure of certain information as does the internal revenue code or a state hit-and-run statute or the federal firearms act. Instead, it merely authorizes the court on motion of the district attorney or

the corporation counsel to examine the mother of any child, with respect to the identity of the father of the child and related circumstances of the conception. If the state has such a substantial and overriding interest in disclosure, as the corporation counsel suggests, it is likely that it would have expressly authorized mandatory disclosure of the name of the father of the child and such other information as the court deems necessary rather than authorizing merely "an examination" by the court. Furthermore, we doubt that any mandatory disclosure statute could prevail over the individual's right against self-incrimination in a paternity proceedings context unless the statute also provided that the information could not be used in a criminal prosecution. Thus we do not consider this case to be one in which a balancing of the state's interest in the information against the individual's privilege is appropriate. Sheila Grant was asked an incriminating question in a traditional, testimonial context. Her fear of criminal prosecution from the evidence represented by her answer was sufficiently real and appreciable to make the privilege operable.

Of course, the privilege can be replaced by a sufficient grant of immunity. *Kastigar v. United States, supra.* However, no immunity statute is applicable here. Although sec. 891.39(2), Stats., provides immunity to a married woman who answers questions concerning the paternity of her child born out of wedlock, Sheila Grant testified that she has never been married. The general immunity statute, sec. 972.08(1), Stats., applies only to an assertion of the privilege in a criminal hearing or trial.[8] Sec. 52.45, Stats., states that sec. 52.24 is "a civil

---

[8] Sec. 972.08(1), Stats., states as follows: "Whenever any person refuses to testify or to produce books, papers or documents when required to do so before any grand jury, in a proceeding under s. 968.26 or at a preliminary examination, criminal hearing or trial for the reason that the testimony or evidence required of him may

special proceeding" and shall be conducted "according to the provisions of these statutes with respect to civil actions and civil proceedings in courts of record, as far as applicable except as otherwise provided in this chapter." In establishing a civil construction for proceedings under Ch. 52, Stats., the legislature presumably acted with the existing statutes in mind, including the general criminal immunity statute, and thereby manifested an intent to make the general criminal immunity statute inapplicable. *Joint School Dist. No. 2 v. State,* 71 Wis.2d 276, 283, 237 N.W.2d 739 (1976); *State ex rel. Klingler & Schilling v. Baird,* 56 Wis.2d 460, 468, 202 N.W.2d 31 (1972). The power to grant immunity is a legislative power and not an inherent power of either the prosecutor or the court. *Elam v. State,* 50 Wis.2d 383, 392, 393, 184 N.W.2d 176 (1971). Therefore, until the legislature enacts an immunity statute which applies to all witnesses testifying under sec. 52.24, Stats., the county court cannot compel Sheila Grant to answer incriminating questions about the circumstances in which her child was conceived. Her refusal to testify was a proper exercise of her constitutional right, and accordingly the judgment of contempt must be reversed.

*By the Court.*—Judgment reversed.

tend to incriminate him or subject him to a forfeiture or penalty, he may nevertheless be compelled to testify or produce such evidence by order of the court on motion of the district attorney. No person who testifies or produces evidence in obedience to the command of the court in such case shall be liable to any forfeiture or penalty for or on. account of any transaction, matter or thing concerning which he may so testify or produce evidence, but no person shall be exempted from prosecution and punishment for perjury or false swearing committed in so testifying."