STATE of Wisconsin, Plaintiff-Respondent,

v.

Joseph L. MARKS, Defendant-Appellant-Petitioner.

Supreme Court

*No. 93–2452–CR. Oral argument March 8, 1995.—Decided June 20, 1995.*

(Also reported in 533 N.W.2d 730.)

For the defendant-appellant-petitioner there were briefs and oral argument by *William J. Chandek,* Brookfield.

For the plaintiff-respondent the cause was argued by *Stephen W. Kleinmaier,* assistant attorney general,

with whom on the brief was *James E. Doyle,* attorney general.

WILLIAM A. BABLITCH, J. During the trial of Joseph L. Marks for burglary, his accomplice, Scott Meyer, who had already pled guilty and had been convicted and sentenced on the burglary charge, invoked his privilege against self-incrimination and refused to testify. The circuit court, declaring Meyer unavailable as a witness, allowed Meyer's prior testimony at Marks' preliminary examination into evidence. The court of appeals agreed, holding that Meyer had a real and appreciable fear of self-incrimination as a result of his expressed intention to seek modification of his sentence. Marks appeals, arguing that the circuit court erred in declaring Meyer unavailable as a witness, and that the subsequent use of his accomplice's preliminary examination testimony violated his right to confront witnesses against him. We conclude that the Fifth Amendment privilege against self-incrimination extends beyond sentencing as long as the witness has a real and appreciable fear of further self-incrimination. We reverse the court of appeals, however, and conclude that the circuit court erred in declaring Meyer unavailable based on his Fifth Amendment claim without inquiring further into the basis for the claimed privilege. Accordingly, we remand to the circuit court with directions to conduct further inquiry as to whether Meyer's fear of self-incrimination was real and appreciable.

The facts are these. Marks was charged with burglary to a room within a building, contrary to sec. 943.10(1)(f), Stats. During a preliminary motion at Marks' trial, the State of Wisconsin (State) indicated its intent to call Meyer, an accomplice in the burglary

who had already pled guilty and had been convicted and sentenced on the burglary charge. Meyer had previously inculpated Marks during his testimony at Marks' preliminary hearing. The State informed the court that in an earlier meeting with Meyer, Meyer indicated he intended to seek modification of his sentence and had attempted to contact the State Public Defender to initiate his appeal. Therefore, he claimed he would not testify at Marks' trial but would plead the Fifth. As a result, the State requested that the court declare Meyer unavailable and allow Meyer's testimony from the preliminary hearing to be read to the jury.

The attorney for Marks objected. He contended that because of the limited opportunity he had to cross-examine Meyer at the preliminary hearing, use of his testimony at trial would violate Marks' Sixth Amendment right to confront a witness.

Based upon the information provided by the State, the court declared Meyer unavailable as a witness under sec. 908.04(1)(a), Stats.[1] After determining that

---

[1] Section 908.04, Stats., provides in part:

**Hearsay exceptions; declarant unavailable; definition of unavailability. (1)** "Unavailability as a witness" includes situations in which the declarant:

(a) Is exempted by ruling of the judge on the ground of privilege from testifying concerning the subject matter of the declarant's statement;

Section 908.045, Stats., provides that when a witness is declared unavailable, the following testimony is not excluded by the hearsay rule:

**(1)** FORMER TESTIMONY. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of another proceeding, at the instance of or against a party with an opportunity to develop the testimony by direct, cross-, or redirect

Meyer's earlier statements at the preliminary hearing were reliable, the court declared that the statements would be admissible at trial without violating Marks' right of confrontation. Marks was subsequently convicted and sentenced to three years in the Wisconsin State Prisons, consecutive to sentences in unrelated cases.

Marks appealed, and the court of appeals affirmed the circuit court. The court concluded that a person in Meyer's position was not appreciably different than someone waiting to be sentenced. The court of appeals noted that under *State v. McConnohie,* 121 Wis. 2d 57, 63–68, 358 N.W.2d 256 (1984), a defendant waiting to be sentenced could invoke the privilege against self-incrimination. Having found Meyer unavailable as a witness under sec. 908.04(1)(a), Stats., the court further concluded that Meyer's testimony could be read to the jury because it bore sufficient indicia of reliability to satisfy Marks' right to confrontation under *State v. Bauer,* 109 Wis. 2d 204, 219, 325 N.W.2d 857 (1982). Marks petitioned and we granted review.

As a preliminary matter, we address the State's argument that counsel for Marks waived the right to challenge the circuit court's conclusion that Meyer was unavailable as a witness. The State argues that counsel for Marks did not object on the basis of the court's ruling of unavailability but only challenged the use of Meyer's testimony on the basis that it violated Marks' right of confrontation.

■■■

As a rule, we will not elevate form over substance when addressing waiver arguments. *State v. Barthels,* 166 Wis. 2d 876, 884, 480 N.W.2d 814, 818 (Ct. App.

examination, with motive and interest similar to those of the party against whom now offered.

1992), *aff'd*, 174 Wis. 2d 173, 184 n.8. Where the grounds of the objection are obvious, the specific ground of objection is not important. *Id. citing Champlain v. State,* 53 Wis. 2d 751, 758, 193 N.W.2d 868 (1972). Under *Bauer,* 109 Wis. 2d at 210, the initial question in determining whether the right of confrontation must give way to allow prior out-of-court statements made in the course of a prior judicial hearing, is whether the evidence is admissible under the Wisconsin Rules of Evidence. Here, the court allowed Meyer's testimony to be read to the jury under an exception to the hearsay rule in sec. 908.045, Stats., which provides that former testimony may be admissible if a declarant is unavailable as a witness as defined in sec. 908.04(1)(a). We are persuaded by Marks that an objection based upon the right of confrontation encompasses an objection to the court's conclusion that Meyer was unavailable for purposes of sec. 908.045. Although the specific ground under the confrontation clause was not stated, counsel's intent was obvious.

Therefore, we address whether Marks was denied his right of confrontation when the circuit court declared Meyer, a witness who had been convicted and sentenced for being an accomplice to the crime for which Marks was being tried, unavailable under sec. 908.04(1)(a), Stats, based upon his Fifth Amendment privilege against self-incrimination.

The threshold question in a challenge based on the confrontation clause is "whether the evidence sought to be introduced . . . is admissible under the Rules of Evidence of Wisconsin, chs. 901–911, Stats." *Bauer,* 109 Wis. 2d at 210. "If the evidence does not fit within a recognized hearsay exception, it must be excluded." *Id.* Here, the court found the evidence admissible under a hearsay exception which allows former testimony

when a declarant is determined to be unavailable under sec. 908.04(1)(a), Stats. Marks argues that the circuit court erred in declaring Meyer unavailable under sec. 908.04(1)(a) based on his Fifth Amendment claim against self-incrimination. Specifically, Marks contends: (1) that Meyer could not plead the Fifth because he had already been convicted and sentenced; and (2) that even if a defendant can plead the Fifth after sentencing, Meyer's mere intention to have his sentence modified was not enough to give rise to a real and appreciable fear of further incrimination, and thus, was not enough to sustain a claim based on the Fifth Amendment privilege against self-incrimination.

■■■

We first turn to Marks' argument that Meyer could not plead the Fifth because he had already been convicted and sentenced. "The right against self-incrimination is a fundamental right guaranteed by both art. I, sec. 8, Wis. Const., and by the U.S. Const., amend. V, which is made applicable to the states by reason of the due process clause of the fourteenth amendment." *In Matter of Grant,* 83 Wis. 2d 77, 80, 264 N.W.2d 587 (1978). The privilege may be invoked whenever "a witness has a real and appreciable apprehension that the information requested could be used against him in a criminal proceeding." *Id.* at 81. Although there is "weighty" authority for the view that the privilege is lost upon a guilty plea or conviction, *see McConnohie,* 121 Wis. 2d at 64 (quoting *Reina v. United States,* 364 U.S. 507, 513 (1960)), courts have recognized that even after a guilty plea or conviction a defendant may possess a real and appreciable fear of further incrimination.

For example, in an Illinois case, *People v. Edgeston,* 623 N.E.2d 329, 339–340 (Ill. 1993), *cert. denied,*

114 S. Ct. 2766 (1994), the Supreme Court of Illinois recognized the right to plead the Fifth after conviction and sentencing when the person claiming the privilege indicates an intent to file a post-conviction motion. In *Edgeston,* the defendant called an accomplice to testify who had pled guilty to the murder of another victim in return for having the charges in Edgeston's case dropped. The accomplice refused to testify based on the privilege against self-incrimination because he feared his testimony could subsequently incriminate him if the court granted his post-conviction motion challenging his guilty plea to the other murder. *Id.* at 339. The *Edgeston* court upheld the accomplice's Fifth Amendment claim reasoning:

> Sullivan stated that he intended to file a post-conviction petition challenging the validity of the guilty plea upon which the dismissal of charges against him in the King case was based. Further, the State represented to the court that if Sullivan's petition for post-conviction relief was heard and granted, his guilty plea would be vacated and "we could potentially reinstate [the King] charges, we could then use his testimony in prospective prosecution of that charge." Therefore, compelling Sullivan to testify would effectively prevent him from seeking the collateral relief to which he was statutorily entitled. *Id.* at 339–40.

In response to Edgeston's request that the accomplice make a specific showing that collateral attack of the conviction was likely to be successful, the court concluded: "such a showing is unnecessary where it is implicit in the trial court's determination that there is a 'real danger' of incrimination." *Id.* at 340; *see also Ellison v. State,* 528 A.2d 1271, 1274 (Md. 1987) (privilege upheld during 30 day period after sentencing

when appellate review or sentence review is available); *Holsen v. United States,* 392 F.2d 292, 293 (5th Cir. 1968), *cert. denied,* 393 U.S. 1029 (1969) (privilege upheld where witness is "in the process" of appealing conviction); *Ottomano v. United States,* 468 F.2d 269, 274 (1st Cir. 1972), *cert. denied,* 409 U.S. 1128 (1973) (privilege upheld where witness had motion to vacate sentence pending); Annotation, *Plea of Guilty or Conviction as Resulting in Loss of Privilege Against Self-Incrimination As To Crime In Question,* 9 A.L.R. 3d 990.

Our court of appeals recognized a similar right in *State v. Harris,* 92 Wis. 2d 836, 846–47, 285 N.W.2d 917 (Ct. App. 1979). In *Harris,* the court determined that a witness has the right to plead the Fifth after sentencing if he or she still has the common law right to withdraw a plea and has made a good faith expression of an intent to do so. *Id.* at 847.

Although we have not decided whether the privilege against self-incrimination exists after sentencing, we have recognized that the Fifth Amendment privilege extends beyond a guilty plea and conviction. *See State v. McConnohie,* 121 Wis. 2d at 62. In *McConnohie,* the defendant on trial called a witness who had pled no contest to the charge for which the defendant was being tried as an accomplice but had not yet been sentenced. The witness refused to answer questions concerning the crime and invoked his privilege against self-incrimination. *Id.* at 63. The defendant was subsequently convicted.

On appeal, the defendant challenged the witness' ability to invoke the Fifth Amendment privilege where the witness had already pled no contest and had been convicted. We rejected the defendant's challenge, how-

ever, concluding that the privilege continued at least until sentencing. *Id.* at 62. Initially, we focused on the harm which could ensue if the witness were forced to testify prior to sentencing: "Here, [the witness] was being asked to testify before . . . the same judge who had accepted [the witness'] plea and who was to sentence [the witness] at a later date. There was potential danger to [the witness] of an increased sentence resulting from his own testimony." *Id.* at 66.

Further, we recognized a potential plea withdrawal as a second reason for holding that the privilege against self-incrimination continued at least through sentencing. *Id.* at 66–67. We reasoned that the witness in *McConnohie* who pled no contest to the charge could be forced to withdraw his plea if the State did not adhere to its sentencing recommendations. If that occurred, the witness could reasonably fear that his testimony might incriminate him if the State subsequently decided to try him. *McConnohie,* 121 Wis. 2d at 67.

Because the question in *McConnohie* was limited to whether the Fifth Amendment privilege existed during the period of time between conviction and sentencing, we did not go as far as *Harris* or *Edgeston* in determining that a person retains the Fifth Amendment privilege while an appeal is pending or before the time for an appeal as of right or plea withdrawal has expired. We did, however, acknowledge that there was support for that position. *Id.* at 65 n.3. We now so conclude.

A witness may reasonably and appreciably fear incrimination while an appeal is pending or during that time which a witness may, by right, appeal his or her conviction and has good faith intentions of doing so.

92

Like *McConnohie,* where the witness feared the potential for a harsher sentence if he testified at his or her accomplice's trial, a defendant who appeals might reasonably fear that his testimony at an accomplice's trial could strengthen the State's case if he is awarded a new trial.

In addition, a witness might fear further prosecution if he or she intends to withdraw his or her plea, and still has the common law right to do so under *State v. Lee,* 88 Wis. 2d 239, 246, 276 N.W.2d 268 (1979). Under *Lee,* a defendant may withdraw his or her plea within one year of conviction, provided he or she meets the requisite burdens of proof. *Id.* at 246. If the defendant intends to withdraw his or her plea, the testimony he or she provides as a witness could be used to strengthen a subsequent prosecution if the plea withdrawal is accepted and the State decides to try the defendant.

A more difficult question is presented when the invocation of the Fifth Amendment right is grounded solely upon a defendant's expressed intention or actual filing of a sentence modification. We conclude that a witness may "reasonably and appreciably" fear incrimination if he or she expresses a good faith intent to or is in the process of moving to modify his or her sentence. The rationale of *McConnohie* compels this conclusion. In *McConnohie,* we recognized that a witness who has not yet been sentenced might legitimately fear that his testimony at an accomplice's trial would cause the sentencing court to impose a harsher sentence than it would have otherwise imposed without the additional testimony. This rationale is supported by both federal and state courts. *See e.g., U.S. v. Lugg,* 892 F.2d 101,

103 (D.C. Cir. 1989) (distinguishing *U.S. v. Pardo,* 636 F.2d 535, *see* concurring op. at 99, on the basis that the witness in *Lugg,* unlike the witness in *Pardo,* had not yet been sentenced: "the convicted but unsentenced defendant retains a legitimate protectable Fifth Amendment interest in not testifying as to incriminating matters that could yet have an impact on his sentence."); *Mills v. United States,* 281 F.2d 736, 741 (4th Cir. 1960).

Similarly, a witness who intends to or who has moved to modify his or her sentence may legitimately fear that the court would deny the motion in light of the additional incriminating testimony. That is, but for the additional incriminating testimony there is a strong likelihood the sentencing court would reduce the sentence. The fear of the defendant in giving incriminating testimony is just as real in this situation as it was in *McConnohie* where we said: "Here [the witness] was being asked to testify before Judge Holz, the same judge who had accepted [the witness's] plea and who was to sentence [the witness] at a later date. There was a *potential danger to [the witness] of an increased sentence* resulting from his own testimony." 121 Wis. 2d at 66. (Emphasis added).

Further, contrary to the concurring opinion, this fear is a legitimate fear which warrants the application of the Fifth Amendment privilege against self-incrimination. The privilege is not only intended to protect a defendant when his answers would lead to conviction, *see* concurring op. at 100, but is intended to protect a defendant when the defendant "apprehends a *danger* from a direct answer." *Hoffman v. United States,* 341 U.S. 479, 486 (1951) (Emphasis added). The Supreme Court of the United States has recognized that a legiti-

mate danger is that of incarceration, or the impending threat of the deprivation of one's liberty. *See Allen v. Illinois,* 478 U.S. 364, 372 (1986); *In re Gault,* 387 U.S. 1, 50 (1967). Here, a defendant could legitimately fear that his testimony might result in the court denying his motion to reduce the amount of time he spends incarcerated. Unlike the concurring opinion, we see no difference between this fear and the fear of a defendant prior to sentencing; in both situations the defendant may legitimately fear that his testimony would directly affect the length of time he spends incarcerated.

However, because a defendant has the ability to move to modify his or her sentence any time after sentencing if the motion is based on new factors which were not in existence at the time of sentencing or which were unknowingly overlooked by all of the parties, *see State v. Franklin,* 148 Wis. 2d 1, 8, 434 N.W.2d 609 (1989); *see also* Michael S. Heffernan, *Appellate Practice and Procedure in Wisconsin,* § 19–4 at 19–18 (2d ed. 1986), we limit a defendant's ability to plead the Fifth based solely on a defendant's expressed sentence modification concerns. We conclude that in order to have a "real and appreciable" fear of incrimination, that is, in order to legitimately fear that testimony will cause a judge to deny a motion to modify, the defendant must show an appreciable chance of success on the motion to modify. If a defendant can do so, he or she can exercise the privilege against self-incrimination.

Accordingly, we hold that the Fifth Amendment privilege against self-incrimination extends beyond sentencing as long as a defendant has a real and appreciable fear of further incrimination as may be the case where an appeal is pending, before an appeal as of right

95

or plea withdrawal has expired, or where the defendant intends to or is in the process of moving to modify his or her sentence and can show an appreciable chance of success.

Next, we address Marks' alternative argument that even if the Fifth Amendment privilege extends beyond sentencing, Meyer's mere intent to have his sentence modified was not enough to give rise to a real and appreciable fear of further incrimination, and thus, not enough to sustain a Fifth Amendment claim.

The standard that circuit courts should apply in determining whether to uphold a witness' Fifth Amendment claim has been enunciated by the United States Supreme Court in *Hoffman v. United States,* 341 U.S. 479, 486–87 (1951):

> The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence. . . . But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. (citation omitted). The witness is not exonerated from answering merely because he declares that in doing so he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, (citation omitted), and to require him to answer if "it clearly appears to the court that he is mistaken." *Temple v. Commonwealth,* 75 Va. 892, 899 (1881). However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is

designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." See Taft, J., in *Ex Parte Irvine,* 74 F. 954, 960 (C. C. S. D. Ohio, 1896).

We interpreted this standard in *McConnohie* and concluded that when it is clear to the circuit court from the circumstances "that the testimony of the witness 'might be dangerous because injurious disclosure could result,' the need for specific inquiry into the basis for the claimed privilege is diminished." *Id.* at 69 (quoting *Hoffman,* 341 U.S. at 486–87). With this as our guide, we consider the circumstances at Marks' trial.

■

When the circuit court upheld Meyer's Fifth Amendment claim, it possessed these salient facts:

(1) Mr. Meyer was convicted of the same burglary at issue in Marks' trial on July 27, 1992;

(2) Mr. Meyer indicated to the State that he intended to file a sentence modification motion, that he had written a letter to the State Public Defender asking for their assistance, and that he had researched the matter at the prison's law library; and

(3) Marks' counsel was going to ask Meyer about the incidents on the night of the burglary and about his earlier conviction.

97

We conclude that these facts alone are insufficient to sustain a Fifth Amendment claim. Although the State argues that at the time of Marks' trial, Meyer was within the statutory time limits for appeal, there is nothing in the record before us to support that Meyer filed an appeal or preserved his right to appeal by fulfilling the requirements under sec. 809.30, Stats. Similarly, there is no evidence that Meyer made a good faith expression of an intent to withdraw his guilty plea in a timely manner. Finally, there is no evidence that Meyer had contacted the Public Defender's office, or had any appreciable chance of success on a motion to modify his sentence. Without knowing these things, the court could not conclude that Meyer's testimony "might be dangerous because injurious disclosure could result."

Accordingly, we conclude that the circuit court did not make sufficient inquiry into the basis for Meyer's Fifth Amendment claim to determine whether it was valid before declaring him unavailable under sec. 908.04(1)(a), Stats, and allowing his testimony to be read to the jury. Therefore, we remand to the circuit court to determine whether Meyer had filed an appeal or preserved his rights to appeal, expressed good faith intentions to withdraw his guilty plea in a timely manner, or expressed a good faith intention to modify his sentence and had an appreciable chance of success.

*By the Court.*—The decision of the court of appeals is reversed and remanded with directions.

JANINE P. GESKE, J. *(concurring)*. I concur with the majority's holding that "the Fifth Amendment privilege against self-incrimination extends beyond sentencing as long as a defendant has a real and appre-

ciable fear of further incrimination as may be the case where an appeal is pending [or] before an appeal as of right or plea withdrawal has expired . . .." Majority op. at 95–96. However, whether or not that privilege extends to Meyer in this case requires further inquiry by the circuit court to determine if he in fact filed an appeal or, in the alternative, if he made a good-faith expression of an intent to withdraw his guilty plea in a timely manner. If Meyer merely intended to file a motion to modify sentence sometime in the future, without also challenging the grounds for his conviction, he was not entitled to protection under the Fifth Amendment.

The Fifth Amendment privilege against self-incrimination "is one of the cornerstones of the American constitutional system of criminal procedure and must be liberally construed to achieve its protective purpose." *United States v. Pardo,* 636 F.2d 535, 542 (D.C. Cir. 1980) (citing *Maness v. Meyers,* 419 U.S. 449, 461 (1975)). However, "the privilege has no application beyond that 'protective purpose.' " *Id.* Accordingly,

> [t]he interdiction of the Fifth Amendment operates only where a witness is asked to incriminate himself—in other words, to give testimony which may possibly expose him to a criminal charge. But if the criminality has already been taken away, the Amendment ceases to apply.

*Hale v. Henkel,* 201 U.S. 43, 67 (1906). The privilege, therefore, does not extend to a witness who "has been convicted of [an] offense with respect to which he fears incrimination." *Pardo,* 636 F.2d at 543; *see also* E. R. Soeffing, Annotation, "Plea of Guilty or Conviction as Resulting in Loss of Privilege Against Self-Incrimination as to Crime in Question," 9 A.L.R.3d 990 (1966). In

99

light of these standards, I do not believe that the Fifth Amendment affords protection against compelled testimony about a crime for which the witness has been convicted and sentenced and has either exhausted appellate rights or has decided not to pursue them.

The scope of the Fifth Amendment privilege against self-incrimination was described in *State v. McConnohie,* 121 Wis. 2d 57, 358 N.W.2d 256 (1984), wherein the court considered whether a defendant was denied his Sixth Amendment right to compulsory process when the trial court upheld the Fifth Amendment privilege claim of a witness who had been convicted but not sentenced for being a party to the crime for which the defendant was being tried. *Id.* at 63. The court held that at the time the witness was called to testify, his Fifth Amendment privilege was still available because even though the witness had been convicted of being party to the crime for which the defendant was being tried, the privilege continued until the time of sentencing. *Id.*

In this case, however, the majority improperly extends the scope of the Fifth Amendment privilege for the following reasons. First, the majority states that the rationale of *McConnohie* compels the conclusion "that a witness may 'reasonably and appreciably' fear incrimination if he or she expresses a good faith intent to or is in the process of moving to modify his or her sentence." Majority op. at 93. The majority reaches that conclusion by relying on the following statement in *McConnohie:* "There was a potential danger to [the witness who is between a guilty plea and sentencing] of an increased sentence resulting from his own testimony." *McConnohie,* 121 Wis. 2d at 66. This statement, however, does not accurately reflect the court's holding in *McConnohie.* Rather, the court clearly concluded

100

that a witness who has entered a guilty plea to a criminal charge retains his Fifth Amendment privilege until the time of sentencing because

> [i]n Wisconsin, a defendant may withdraw his guilty plea prior to sentencing for any 'fair and just reason.' . . . Incriminating statements by the [defendant who has pled no contest or entered a guilty plea] may affect the discretionary determination of the trial court as to the existence of a fair and just reason to withdraw the plea. . . . [The] testimony could, as a practical matter, make a defendant's guilty plea or no contest plea irrevocable. We agree . . . that this amounts to self-incrimination.

*Id.* at 68 (citation omitted). By holding as it has, however, the majority in this case has substantially extended dicta from *McConnohie* to now hold that a witness *who has already been sentenced* retains protection under the Fifth Amendment if the witness simply expresses a future good-faith intent to file a motion to modify sentence. However, the majority can cite no authority for such a holding, and I believe that such a conclusion extends the Fifth Amendment privilege far beyond what was envisioned by the *McConnohie* court.[1]

Second, Meyer was convicted *and* sentenced before he was called as a witness in this case. If Meyer had been asked to testify prior to his own sentencing, he would have had a right to invoke the protections of the

---

[1] For example, the majority's expansion of the scope of the Fifth Amendment could easily lead to the following result: a witness who has been previously convicted and sentenced for a crime may claim the privilege and refuse to testify about a crime because the witness intends to seek a governor's pardon at what he or she perceives to be an opportune time.

Fifth Amendment. Further, that protection would have continued after sentencing if Meyer had retained the common law right to withdraw his guilty plea or had made a good-faith expression of an intent to do so. *State v. Harris,* 92 Wis. 2d 836, 847, 285 N.W.2d 917 (Ct. App. 1979); *see also State v. Anastas,* 107 Wis. 2d 270, 274, 320 N.W.2d 15 (Ct. App. 1982) (the right against self-incrimination continues throughout the appeals process).

Finally, even if Meyer filed a motion to modify his sentence for the burglary conviction, an increased sentence for that crime could not be the result. Distinct from a sentencing hearing, the judge at a hearing on a motion to modify sentence considers the legality and appropriateness of the sentence imposed. *See State v. Franklin,* 148 Wis. 2d 1, 8, 434 N.W.2d 609 (1989); *see also* §§ 809.30(2) and 973.19, Stats. A circuit court must decide whether a defendant can show the existence of a "new factor"[2] which is

> highly relevant to the imposition of sentence, but not known to the trial judge *at the time of original sentencing,* either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

*Rosado v. State,* 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975) (emphasis added). The only focus at a motion to modify sentence hearing is whether the sentence ought to be *reduced* because of the introduction of a "new factor." Unlike the situation faced by the witness in *McConnohie,* Meyer did not confront the "potential danger . . . of an increased sentence resulting from his

---

[2] *Franklin,* 148 Wis. 2d at 8.

own testimony." *McConnohie,* 121 Wis. 2d at 66 (quoted in majority op. at 92).

I conclude that Meyer's guilty plea, subsequent conviction, and sentencing foreclose his invocation of the Fifth Amendment privilege, unless the state establishes that (1) an appeal of his conviction has been filed or (2) Meyer expressed a good-faith intent to timely file a motion to withdraw his guilty plea. Without that proof, the circuit court should have compelled Meyer's testimony.

I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and JON P. WILCOX join this concurring opinion.