STATE of Wisconsin, Plaintiff-Respondent,

v.

Lucian AGNELLO, Defendant-Appellant-Petitioner.

Supreme Court

*No. 96–3406–CR. Oral argument January 15, 1999.—Decided May 20, 1999.*

(Also reported in 593 N.W.2d 427.)

166

For the defendant-appellant-petitioner there were briefs by *Jerome F. Buting, Pamela Moorshead* and *Buting & Williams, S.C.*, Brookfield and oral argument by *Jerome F. Buting*.

For the plaintiff-appellant the cause was argued by *Gregory M. Posner-Weber*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Lucian Agnello, seeks review of an unpublished decision of the court of appeals[1] that affirmed the circuit court's finding that he voluntarily confessed to murdering his foster father. Agnello contends that the circuit court erroneously allowed the State to question him about the truthfulness of his confession at the *Goodchild*[2] hearing and that this error tainted the circuit court's finding that his confession was voluntarily

---

[1] *State v. Agnello*, No. 96-3406-CR, unpublished slip op. (Wis. Ct. App. Mar. 10, 1998) (affirming judgment of Circuit Court for Milwaukee County, Diane S. Sykes, Judge).

[2] *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

given. Because we conclude that Agnello preserved this issue for appeal, that the prosecutor improperly questioned Agnello about the truthfulness of his confession, and that the circuit court based its finding in part on Agnello's responses to the improper questions, we reverse the court of appeals and remand the cause to the circuit court. Additionally, we determine that on remand the State will need to prove Agnello's confession was voluntarily given by a preponderance of the evidence.

¶ 2.    In February of 1996, the Milwaukee Police Department arrested Agnello in connection with the murder of his foster father, Theodore Agnello. Between midnight and 1:00 a.m., the police transported Agnello to the downtown station and placed him in a standard interrogation room where he remained alone and handcuffed to a wall until the police began interrogating him at 6:00 a.m.[3] From approximately 6:00 a.m. to 8:20 a.m., two detectives questioned him about his foster father's death. After over a 90-minute break, two other detectives began interrogating him at 10:15 a.m. This session continued, with significant breaks interspersed, until 3:20 p.m.

¶ 3.    Whenever the police left Agnello alone in the room he was handcuffed to a wall; during his interrogation he was not handcuffed. From the time he was placed in the room until he confessed, the police allowed Agnello to use the bathroom once or twice and

---

[3] In his testimony at the *Goodchild* hearing, Agnello testified that the police began their interrogation of him shortly after being placed in the interrogation room. Although the circuit court made no specific finding that the interrogation began at 6:00 a.m., it generally found the police detective's version of the events more compelling, which included testimony that the interrogation did not begin until 6:00 a.m.

also fed him a hamburger. Agnello's ability to sleep was hampered both by the periods of interrogation and by being handcuffed to the wall. At 3:20 p.m. Agnello confessed to murdering his foster father and signed a written confession.

¶ 4. After being charged with first degree intentional homicide[4] and party to a crime,[5] Agnello filed a motion to suppress his confession on two grounds. First, Agnello alleged that his confession was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), because the police did not honor his requests for an attorney. Second, Agnello alleged that his confession was not freely and voluntarily given because the police coerced him into confessing. The circuit court then held a *Miranda-Goodchild* hearing at which Agnello testified. On cross-examination, the following exchange occurred:

> PROSECUTOR: Q. Sir, you signed the statement at the end and you wrote down the words, "this is true"; is that correct?
>
> A. I wrote down the words?
>
> Q. Answer my question. Did you write it down?
>
> A. Yes, I was told to.
>
> Q. And you wrote down, "this is true," and you signed it; is that right?
>
> A. Yes, I was told to.
>
> Q. And you did that because what is in the statement is true; is that correct?

---

[4] Wis. Stat. § 940.01 (1995–96). Unless otherwise noted, all further references to the Wisconsin Statutes will be to the 1995–96 version.

[5] Wis. Stat. § 939.05.

A. No. Because I was extremely tired and scared.

. . .

Q. You told them that the shotgun was in Mr. Stream's attic; is that correct?

A. Yes.

Q. And you told them that you and Mr. Stream had planned on this killing; is that correct?

A. I don't quite remember that.

Q. You could have told them that? You don't remember telling them that?

A. I don't remember that.

Q. But you and Mr. Stream had planned this killing; is that correct?

DEFENSE COUNSEL: I object, Your Honor. I don't think that is relative[6] [sic] to the purposes of this hearing.

THE COURT: This goes to his credibility. Answer the question.

The remainder of Agnello's cross-examination consisted of the prosecutor attempting to ascertain whether or not statements in his confession were true and Agnello evasively answering those questions.

¶ 5. At the close of the *Miranda-Goodchild* hearing the circuit court concluded that the police officers' testimony of the events was more credible than that of Agnello, in part because of what the court described as Agnello's "selective memory." The court then concluded that the police did not run afoul of *Miranda* because

---

[6] Both parties agree that the defense counsel was talking about "relevance." It is unknown whether the defense attorney or the court reporter committed the error. In any event, we conclude that we are dealing with a relevancy objection.

170

Agnello did not request an attorney.[7] Finally, the court concluded that the police did not engage in any coercive tactics and that Agnello's confession was a "voluntary product of his free will." Agnello then pled guilty and was sentenced to life in prison.

¶ 6.   On appeal, Agnello argued that the circuit court erred under *Rogers v. Richmond*, 365 U.S. 534 (1961), and *Jackson v. Denno*, 378 U.S. 368 (1964), by allowing the prosecutor to question Agnello about the truthfulness of his confession. The court of appeals concluded that Agnello waived his right to appeal this issue because his relevancy objection did not adequately apprise the circuit court of the basis of his objection. In order to have a valid objection, the court of appeals reasoned that Agnello needed to reference more specifically the Supreme Court's rulings that the truthfulness of a confession may not be considered in a voluntariness determination. The court of appeals determined that as it was stated, Agnello's objection did not adequately inform the circuit court of his objection and as a result did not give the circuit court the opportunity to assess and correct any constitutional error.

¶ 7.   Agnello also argued that the circuit court erred in concluding that his confession was voluntary. The court of appeals concluded that the State's burden is a preponderance of the evidence and that Agnello argued to the circuit court only that his confession was involuntary because he was deprived of sleep. Based upon a review of the circuit court's findings of fact, the court of appeals determined that Agnello's confession was voluntary.

---

[7] This determination is not challenged on appeal.

¶ 8.   On petition to this court Agnello challenges nearly every aspect of the court of appeals' ruling. Specifically, he argues that his relevancy objection during cross-examination adequately preserved the issue for appeal. Agnello contends that the circuit court committed constitutional error under *Rogers* and *Jackson* by allowing the prosecutor to question him about the truthfulness of his confession. He also argues that, contrary to the court of appeals' decision, the State must prove beyond a reasonable doubt that a defendant voluntarily confessed.[8]

¶ 9.   Whether an objection adequately preserves an issue for appeal requires a court to apply a set of facts to a legal standard. This is a question of law that we review independently of the legal determinations rendered by the court of appeals and circuit court but benefiting from their analyses. *In re Corey J.G.*, 215 Wis. 2d 395, 405, 572 N.W.2d 845 (1998).

¶ 10.   The necessity of lodging an adequate objection to preserve an issue for appeal cannot be overstated. We have written on numerous occasions that in order to maintain an objection on appeal, the objector must articulate the specific grounds for the

---

[8] Agnello further contends that his arguments to the circuit court did not rely exclusively on a lack of sleep but also encompassed the duration of the interrogation, the fact that he was handcuffed, the fact that the police used "relay teams," and the fact that he was deprived of food. Ultimately, Agnello argues that his confession was involuntarily given. Because we conclude that the circuit court erred both by permitting the prosecutor to probe the truthfulness of Agnello's confession and by relying on that error in its findings, we do not address these other issues.

objection unless its basis is obvious from its context. *Id.*; *State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997); *State v. Marks*, 194 Wis. 2d 79, 88, 533 N.W.2d 730 (1995). This rule exists in large part so that both parties and courts have notice of the disputed issues as well as a fair opportunity to prepare and address them in a way that most efficiently uses judicial resources. *Corey J.G.*, 215 Wis. 2d at 405; *Caban*, 210 Wis. 2d at 605.

¶ 11.   The State maintains that Agnello's relevancy objection was insufficient to alert the circuit court of the "specific ground for the objection." *See* Daniel Blinka, 7 *Wisconsin Practice: Evidence*, § 103, p. 8 (1991). It contends that the legal theory of relevancy advanced by Agnello was neither stated with sufficient specificity nor obvious and commonplace so as to be immediately recognized by the court. The State contends in its brief that Agnello should have alerted the circuit court to the existence of *Rogers* and *Jackson*, although at oral argument it backed away slightly from this chapter and verse recitation requirement. Regardless of which degree of specificity it would impose on Agnello, the State argues that had Agnello alerted the court to his concerns, both the State and the court could have reacted in such manner to insure that any error was eliminated and appellate review on this issue would have been unnecessary.

¶ 12.   There is no question that Agnello's objection was not as specific as it could have been. The addition of a short phrase, such as "the truthfulness of a confession has no bearing on voluntariness," would have gone a long way to eliminate any confusion over the nature of the objection. However, we have never required an objection to be as specific as possible to be

effective. All that we have required of a party is to object in such a way that the objection's words or context alert the court of its basis. *Corey J.G.*, 215 Wis. 2d at 405. In this instance, the context of the objection and the status of the law in this area gravitate toward a conclusion that Agnello has preserved this issue for appeal.

¶ 13.    It is well settled constitutional law that the truthfulness of a confession can play no role in determining whether that confession was voluntarily given. *Jackson*, 378 U.S. at 376–77; *Rogers*, 365 U.S. at 540–41; *State v. Hoyt*, 21 Wis. 2d 284, 293–94, 128 N.W.2d 645 (1964). This is the case not because coerced confessions carry an insufficient indicia of reliability; they may in some cases be quite reliable. *See* 3 *Wigmore on Evidence* § 822 (1970) (discussing commentators). Rather the truthfulness of a coerced confession cannot play a part in a voluntariness determination because such confessions, and the methods used to obtain them, offend the underpinnings of the criminal law. *Lego v. Twomey*, 404 U.S. 477, 485 (1972); *Rogers*, 365 U.S. at 540–41. As a result, the State ought not be allowed to use illegal means to combat illegal ends. *Rogers*, 365 U.S. at 540–41.

¶ 14.    *Rogers* and *Jackson* have been the law for nearly 40 years and are deeply embedded into the substantive and procedural criminal law of this state. *See, e.g., LaClaw v. State*, 41 Wis. 2d 177, 184–87, 163 N.W.2d 147 (1968); *State ex rel. La Follette v. Raskin*, 30 Wis. 2d 39, 51–52, 139 N.W.2d 667 (1966); *Phillips v. State*, 29 Wis. 2d 521, 531, 139 N.W.2d 41 (1966); *Goodchild*, 27 Wis. 2d at 258–65; *State v. Drogsvold*, 104 Wis. 2d 247, 271–72, 311 N.W.2d 243 (Ct. App. 1981). In addition to the lengthy calm in this area of the

law, *Goodchild* hearings are not uncommon occurrences in the circuit courts of this state. Thus, the *Rogers* rule is both firmly established and commonly applied in the circuit courts of this state.

¶ 15.   While judges are by no means expected to have at the fore of their minds the dispositive principles of every legal issue, the parties can reasonably expect the judge to appreciate those issues that are commonplace without substantial assistance by the litigants. *Heims v. Hanke*, 5 Wis. 2d 465, 471, 93 N.W.2d 455 (1958), *overruled on other grounds*, *Butzow v. Wausau Memorial Hospital*, 51 Wis. 2d 281, 187 N.W.2d 349 (1971); *see also Champlain v. State*, 53 Wis. 2d 751, 758–59, 193 N.W.2d 868 (1972). That expectation reasonably increases when, as is the case with *Goodchild* hearings, the inquiry is limited in scope and the possible issues are finite in number. *Goodchild*, 27 Wis. 2d at 265 ("At this hearing the defendant may take the stand and testify for the limited purpose of making a record of his version of the facts and circumstances under which the confession was obtained."); *State v. Schultz*, 148 Wis. 2d 370, 390, 435 N.W.2d 305 (Ct. App. 1988) (Sundby, J., dissenting), *aff'd* 152 Wis. 2d 408, 448 N.W.2d 424 (1989).

¶ 16.   Finally, we cannot fail to mention that the language of Agnello's objection comes directly from the United States Supreme Court: "The truth or falsity of the statement is not relevant to the voluntariness inquiry..." *Lee v. Illinois*, 476 U.S. 530, 547 n.6 (1986); *see also Twomey*, 404 U.S. at 484 n.12 ("Whether [the confession] be true or false is irrelevant..."). We have difficulty concluding that Agnello's objection was not

properly stated when it parrots the language given by the Supreme Court.[9]

¶ 17.   Considering all of these factors, we conclude that the language of the objection, while not stated with utmost specificity, when coupled with the context of the proceeding sufficiently alerted the circuit court to the nature of the objection. Having determined that Agnello preserved this issue for appeal, we also conclude that the circuit court erred in overruling his objection.

¶ 18.   *Rogers* and *Jackson* make clear that whether a confession is true or false cannot play a part in determining whether it was voluntarily made. The objection followed the prosecutor's question of whether it was true that Agnello and a co-defendant "had planned this killing." This question gets to the heart of the truthfulness of the confession and is far beyond the "limited purpose" of ascertaining the facts and circumstances of the confession for which a defendant may testify under *Goodchild*, 27 Wis. 2d at 265.

¶ 19.   The State maintains that by quizzing Agnello on the truthfulness of his confession, the prosecutor was merely attempting to impeach Agnello's testimony on direct examination. Agnello testified on direct examination that he confessed because he was

---

[9] Additionally, this United States Supreme Court pronouncement has been incorporated into the *Judicial Benchbook* and is therefore part of the information a circuit court can easily obtain should it be unsure of the law. 1 Wisconsin Supreme Court Judicial Education, *Judicial Benchbook* CR15–2 (1997). While the *Benchbook* may not be cited as independent authority for a proposition of law, *State v. Johnson*, 121 Wis. 2d 237, 257, 358 N.W.2d 824 (Ct. App. 1984), the *Benchbook* in this instance merely alerts the circuit court to the law as directly expressed by the Supreme Court.

tired and wanted the ordeal to be over. The State contends that the prosecutor's questioning was designed only to rebut Agnello's testimony and show instead that remorse was his real motivation for confessing.

¶ 20.   It is now axiomatic that a confession's truthfulness or falsity can have no direct bearing on a finding of voluntariness. *Rogers*, 365 U.S. at 544. That is to say, a court cannot conclude that a confession was voluntary because it is true. Some courts, however, have allowed a judge to indirectly evaluate the confession in making a voluntariness finding. In such cases, the judge considers the confession for purposes other than to pass on its truthfulness. *See, e.g., Gilreath v. Mitchell*, 705 F.2d 109, 110 (4th Cir. 1983) (evaluating confession to show that defendant was lucid and capable of rational choice); *United States v. Kreczmer*, 636 F.2d 108, 110–11 (5th Cir. 1981) (evaluating confession to show that defendant was able to speak in a rational manner).

¶ 21.   We do not need to determine at this time whether a court runs afoul of *Rogers* by considering a confession for purposes other than its veracity. A thorough review of the transcript reveals that the prosecutor nowhere even hinted that he was pursuing that line of questioning in an attempt to uncover the "real" motive behind Agnello's confession. The questions on cross-examination do not mention Agnello's motive or lend the inference that impeaching Agnello's motive was anywhere within the prosecutor's purview. Rather, the transcript shows that the prosecutor invited the court to expressly consider that Agnello may well have committed the crime he confessed to committing.[10]

---

[10] A few examples from the transcript of the prosecutor's cross-examination demonstrate the point:

██

¶ 22. The existence of a circuit court error need not necessarily require a new hearing. A new *Goodchild* hearing is only required if the circuit court relied on the error in determining that the confession was voluntarily given. *See Powell v. Mississippi*, 540 So. 2d 13, 15–16 (Miss. 1989). This is essentially a harmless error determination and the State, as the beneficiary of the error, bears the burden of proving beyond a reasonable doubt that the error was harmless. *State v. Sullivan*, 216 Wis. 2d 768, 792, 576 N.W.2d 30 (1998); *see also Arizona v. Fulminante*, 499 U.S. 279, 306–08 (1991) (harmless error doctrine applicable to admission of involuntary confession at trial); *State v. Childs*, 146 Wis. 2d 116, 125–26, 430 N.W.2d 353 (Ct. App. 1988).

¶ 23. The error was hardly harmless, as the prosecutor's irrelevant line of questioning played a sizable role in the circuit court's ruling. The circuit court was faced with two versions of the events surrounding

Q.  And you [signed the confession] because what is in the statement is true; is that correct?

. . .

Q.  And you told Mr. Stream you wanted your stepfather killed; is that correct?

. . .

Q.  But you and Mr. Stream had planned the killing; is that correct. . .?

. . .

Q.  You asked Mr. Stream to kill your stepfather though; is that correct?

. . .

Q.  And [the statement] was basically true; is that correct?

A.  I wouldn't go as far as basically true, no.

Q.  But pretty much true. There are facts in there that are true; is that correct?

178

Agnello's interrogation and confession and as a result needed to determine which of the two versions was the more believable. There is nothing unusual for a circuit court to face such a task in these types of hearings. *See State v. Pires*, 55 Wis. 2d 597, 602–03, 201 N.W.2d 153 (1972).

¶ 24. However, in reasoning that the police version was more believable, the circuit court indicated that Agnello's credibility was significantly damaged, in part, by his "selective memory in this case." A review of the transcript reveals that the only times Agnello's memory could be categorized as selective were when the prosecutor sought information related to the truthfulness of his confession. Had the improper line of questioning been absent, so too would have been Agnello's selective memory. Under these circumstances, the circuit court's finding that Agnello's confession was voluntarily given must be reversed, Agnello's conviction vacated, and the matter remanded for the purpose of conducting another *Goodchild* hearing.

¶ 25. We note that there is some confusion in our law regarding the State's proper burden of proof for showing voluntariness in a *Goodchild* hearing. It is clear that at a constitutional minimum the State must prove by a preponderance of the evidence that the confession was voluntarily obtained. *Twomey*, 404 U.S. at 489. However, in concluding that for federal constitutional purposes the State bears a preponderance burden, the Supreme Court also established that a state was "free, pursuant to [its] own law, to adopt a higher standard." *Id.* Agnello contends that we have done so and urges us not to waiver from that position.

¶ 26. Initially it might appear settled that Wisconsin requires the State to prove voluntariness

beyond a reasonable doubt. Indeed, prior cases suggest that proposition.[11] Upon closer inspection, however, it is revealed that this burden's origin is universally traced back to *Goodchild* where it was stated without elaboration. *See, e.g., Blaszke v. State*, 69 Wis. 2d 81, 86, 230 N.W.2d 133 (1975); *State v. Hernandez*, 61 Wis. 2d 253, 258, 212 N.W.2d 118 (1973); *see also Twomey*, 404 U.S. at 479 n.1. As pointed out in oral argument, this standard has remained untouched since *Goodchild* not because the court reasoned it to be the appropriate standard, but because until today it has not been specifically challenged. *See Wallace*, 59 Wis. 2d at 79–80.

¶ 27. While this court does not hesitate to provide greater protections for its citizens under the Wisconsin Constitution, it does so only in cases where either the state constitution or "the laws of this state require that greater protection of the citizens' liberties. . .be afforded." *State v. Doe*, 78 Wis. 2d 161, 72, 254 N.W.2d 210 (1977). Where, however, the language of the provision in the state constitution is "virtually identical" to that of the federal provision or where no difference in intent is discernible, Wisconsin courts have normally construed the state constitution consistent with the United States Supreme Court's construction of the federal constitution. *State v. Tompkins*, 144 Wis. 2d 116, 133, 423 N.W.2d 823

---

[11] *See, e.g., State v. Mitchell*, 167 Wis. 2d 672, 696, 482 N.W.2d 364 (1992); *Johnson v. State*, 75 Wis. 2d 344, 352, 249 N.W.2d 593 (1977); *Goodchild*, 27 Wis. 2d at 264–65. *But see State v. Albrecht*, 184 Wis. 2d 287, 516 N.W.2d 776 (Ct. App. 1994) (concluding that the standard is preponderance of the evidence). Technically *Albrecht* was incorrect in that determination under the controlling precedent at the time it was decided in 1994.

(1988); *see also Kenosha County v. C&S Management, Inc.*, 223 Wis. 2d 373, 588 N.W.2d 236 (1999). Here, the language in Article I, section 8 of the state constitution is nearly identical to that contained in the Fifth Amendment to the federal constitution.[12] We can discern no intended difference between the two provisions and Agnello has not directed us to any.

¶ 28.  Additionally, the preponderance standard aligns the burden in voluntariness determinations with the burdens in other pre-trial constitutional inquiries. It is well established that the State must prove compliance with *Miranda* under the preponderance standard. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *State v. Santiago*, 206 Wis. 2d 3, 29, 556 N.W.2d 687 (1996). So too must the defendant bear the burden of proving a reasonable expectation of privacy under the Fourth Amendment by a preponderance standard. *State v. Rewolinski*, 159 Wis. 2d 1, 16, 464 N.W.2d 401 (1990).

¶ 29.  Also, we note that reducing the State's burden at the *Goodchild* hearing does not alter the State's

---

[12] The Wisconsin Constitution provides in relevant part:

No person may be held to answer for a criminal offense without due process of law, and no person for the same offense may be put twice in jeopardy of punishment, nor may be compelled in any criminal case to be a witness against himself or herself. Wis. Const. art. I, § 8(1).

The United States Constitution provides in relevant part:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . .nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law. . . . U.S. Const. amend. V.

burden at trial—to prove that the defendant committed the crime beyond a reasonable doubt. Thus, the State's ultimate burden, and the defendant's ultimate protection, remains intact. Accordingly, now that the issue is specifically before us, we determine that the State must prove by a preponderance of the evidence that a defendant's confession was voluntarily obtained.

¶ 30.  In sum, we conclude that because of the limited inquiry in a *Goodchild* hearing and the fact that *Rogers* and *Jackson* are well-settled areas of law, Agnello's "relevancy" objection sufficiently alerted the circuit court to his objection and therefore preserved the issue for appeal. Additionally, we conclude that the circuit court erred in overruling Agnello's objection because the prosecutor's line of questions improperly inquired into the truthfulness of Agnello's confession in violation of *Rogers* and *Jackson*. This error was prejudicial as the circuit court relied on Agnello's answers to the improper questions in rendering its finding that the confession was voluntarily given. Finally, we conclude that the State must prove by a preponderance of the evidence that a defendant voluntarily confessed. Accordingly, we reverse the court of appeals, vacate Agnello's conviction, and remand the cause to the circuit court for a new *Goodchild* hearing.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.

¶ 31.  N. PATRICK CROOKS, J. (*dissenting*). I dissent because I conclude that Agnello waived his right to review of whether the prosecutor's line of ques-

tioning at the *Miranda-Goodchild*[1] hearing violated his due process rights under the rule of *Rogers v. Richmond*, 365 U.S. 534 (1961), and *Jackson v. Denno*, 378 U.S. 368 (1964). Consistent with a long line of Wisconsin cases, I also conclude that the State must prove the voluntariness of a confession beyond a reasonable doubt at a *Goodchild* hearing. Further, I find that counsel for Agnello preserved his right to raise on appeal all police tactics used during questioning by specifically arguing that the totality of the circumstances resulted in coercion. Finally, I determine that the circuit court properly found that Agnello's confession was voluntary. Based on these conclusions, I would affirm the decision of the court of appeals.

## I.

¶ 32.    The facts of this case are particularly crucial to its analysis. On the night of February 18, 1996, Agnello's foster father was found dead at the family home, having sustained gunshot wounds to his face and right shoulder. Shortly thereafter, Agnello was arrested in connection with the murder. He was taken to the police station between midnight and 1:00 a.m. on February 19, 1996.

¶ 33.    According to Agnello, when he reached the station he was placed in "a 10 x 15 foot room with three chairs and one desk." Hearing Tr., Apr. 19, 1996 at 81 [hereinafter "Tr."]. Agnello was handcuffed to a wall whenever police officers were not in the room. It appears from the record that Agnello was seated while handcuffed.[2] Agnello testified that whenever police

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966); *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

[2] The record does not directly state that Agnello was seated while he was handcuffed. However, police officers testified at

officers were not in the room, he was permitted to sleep, and did so. *See* Tr. at 85, 89–90.

¶ 34.   According to the testimony of police officers at the *Miranda-Goodchild* hearing, Agnello sat alone in the interrogation room and had the opportunity to sleep until Detectives Moore and Burems entered at 6:00 a.m.[3] Detectives Moore and Burems questioned Agnello from 6:00 a.m. to 8:20 a.m., taking several short breaks. Moore testified at the hearing that Detective Burems advised Agnello of his rights at 6:00 a.m. and that Agnello never asked for an attorney or exercised his right to remain silent. According to Moore, Agnello did not seem tired nor did he complain of fatigue. Agnello did not request any convenience item or bathroom break. Agnello testified that he was able to drink water and sleep when the detectives occasionally left the room. Agnello recalled that he fell asleep when the session was over.

¶ 35.   Agnello awoke when two new detectives, Detectives Temp and Olson, entered the interrogation room. Detectives Temp and Olson questioned Agnello from 10:15 a.m. to 3:20 p.m., with breaks stretching from 11:40 a.m. to 1:15 p.m. and from 2:00 p.m. to 2:50 p.m. Temp testified at the *Miranda-Goodchild* hearing that at the start of the interview, he advised Agnello of

the *Miranda-Goodchild* hearing that Agnello was seated during questioning. In addition, Agnello testified that he slept whenever the police officers left the room, at which time he was handcuffed.

[3] As the majority notes, Agnello's version of events differs from the police officers' version on several points, including the time at which he was first questioned. *See* majority op. at 168 n.3. The circuit court found the police officers to be more credible, in general, than the defendant. *See* Hearing Tr., Apr. 19, 1996 at 169, 171 [hereinafter "Tr."].

his *Miranda* rights. Agnello replied that he understood his rights and waived them by initialing a written waiver statement. According to Temp, Agnello never requested a lawyer or asserted a right to silence.

¶ 36.   Temp stated that Agnello was given "whatever he requested" in regard to convenience items. Tr. at 10. According to Temp, Agnello requested and received a hamburger, almost a full package of cigarettes, two bathroom breaks, five cups of coffee, and water. Agnello's testimony substantially corroborates this.[4]

¶ 37.   Temp testified that both he and Olson were unarmed during questioning and that Agnello was unhandcuffed and was free to walk around the interrogation room. According to Temp, neither detective ever threatened Agnello, used physical force, or employed coercive tactics. Agnello, on the other hand, testified that Olson grabbed his hands several times, causing pain. Olson denied ever touching Agnello's hands.

¶ 38.   According to Temp, Agnello appeared to be sober, alert, and attentive throughout the questioning. While Temp was present, Agnello never slept or complained of being tired. Olson and Temp left the room intermittently, and Agnello slept during those periods.

¶ 39.   Detective Olson wrote out Agnello's statement, in which he confessed to killing his foster father. Agnello claimed that he could not read the statement because he was not wearing his glasses and was tired, so Olson read the statement to him. Olson went over the statement with Agnello on a line-by-line basis. Any inaccuracies were crossed out and Agnello initialed the statement as it was read to him. At the end of the

---

[4] Agnello's testimony differed slightly from Temp's in that he stated that he thought he had taken only one bathroom break. *See* Tr. at 88.

statement, Agnello wrote, "this is all true," and signed the statement. Tr. at 89.

¶ 40. Agnello was charged with first degree intentional homicide as a party to the crime. Agnello moved to suppress his statement on the basis of a claimed denial of counsel, and further, alleged that his confession was not voluntary.

¶ 41. The court held a *Miranda-Goodchild* hearing to consider Agnello's motion. During the hearing, the prosecutor elicited a line of testimony from Agnello (reproduced in full below)[5] which Agnello now claims

---

[5] Following is the relevant portion of the transcript:

PROSECUTOR: Sir, you signed the statement at the end and you wrote down the words, "this is true"; is that correct?

AGNELLO: I wrote down the words?

Q. Answer my question. Did you write it down?

A. Yes, I was told to.

Q. And you wrote down, "this is true," and you signed it; is that right?

A. Yes, I was told to.

Q. And you did that because what is in the statement is true; is that correct?

A. No. Because I was extremely tired and scared.

Q. The fact that you told them that the shotgun was in the attic of Mr. Stream's house, you told them that; is that correct?

A. Doesn't say that in the report.

Q. You're going to have to answer my questions. Did you tell them that?

A. In the report it says I did.

Q. I would ask that you instruct that he answer the question.

THE COURT: You have to listen to the question very carefully and answer the question that's asked.

Q. You told them that the shotgun was in Mr. Stream's attic; is that correct?

A. Yes.

186

impermissibly pertained to the truthfulness of the confession. As the quoted portion of the transcript

Q. And you also told them that you and Mr. Stream had planned on this killing; is that correct?

A. I don't quite remember that.

Q. You could have told them that? You don't remember telling them that?

A. I don't remember that.

Q. But you and Mr. Stream had planned this killing; is that correct?

DEFENSE COUNSEL: I object, your Honor. I don't think that is relative [sic] to the purposes of this hearing.

THE COURT: That goes to his credibility. Answer the question.

A. Can you restate the question?

Q. Yes. You and Mr. Stream planned this killing; is that correct?

A. To the best of my knowledge, no.

Q. To the best of your knowledge, no?

A. It happened quite a while ago, and I've been through a lot of trauma.

Q. So you don't remember if you and Mr. Stream planned this killing; is that correct? Is that fair?

A. I don't remember.

Q. And you had bought the shotgun that did the killing; is that correct?

A. That's correct.

Q. And you gave it to Mr. Stream; is that correct?

A. Yes.

Q. And you told Mr. Stream you wanted your stepfather killed; is that correct?

A. ·I don't remember.

Q. You don't remember?

A. The exact words.

Q. Can you give me the approximate words that you might have used to Mr. Stream?

A. I can't really remember.

187

indicates, defense counsel objected to only one of the questions, stating that the information sought was not

Q.  But you and Mr. Stream had planned the killing; is that correct--even though you don't remember the exact words--is that right?

A.  As far as I remember we didn't plan it.

Q.  You asked Mr. Stream to kill your stepfather though; is that correct?

A.  As far as I remember I didn't.

Q.  But it's possible you could have but you just don't remember today; is that right?

A.  Could you say that over?

Q.  Sure. It's possible you could have asked Mr. Stream to kill your stepfather, you just don't remember that today; is that right?

A.  Possible.

Q.  And Mr. Chandler indicated that and you indicated that you read the statement in front of you; is that right?

A.  Excuse me?

Q.  Mr. Chandler asked you the question, do you remember reading or reviewing prior to testifying today the statement in front of you; is that correct?

A.  Mr. Olson read it to me. That was the only time that I actually heard what was on the paper.

Q.  And you remember what Mr. Olson read; is that right?

A.  Not exactly, no.

Q.  But you remember the gist or basically what Mr. Olson read to you; is that right?

A.  The basic, yeah.

Q.  And that was basically true; is that correct?

A.  I wouldn't go as far as basically true, no.

Q.  But pretty much true. There are facts in there that are true; is that correct?

A.  There might have been.

Q.  You don't remember?

A.  Not that good.

Tr. at 90–94.

188

"relative." Tr. at 91. The parties agree, as the majority noted, that the objection was intended to be a relevancy objection. *See* majority op. at 170 n.6. The circuit court overruled the objection, finding that the information was relevant in assessing Agnello's credibility.

¶ 42.   At the close of the hearing, the circuit court found that Agnello's testimony lacked credibility. The court found that, beyond a reasonable doubt, Agnello had been fully advised of his rights and had waived them. The judge concluded:

> And so I do find beyond a reasonable doubt under all of the circumstances that have been testified [to] here today as far as Mr. Agnello's statement to the police is concerned that that statement was made by the defendant as a voluntary product of a free will and that it was his own deliberate choice to make that statement, and that it was not coerced in any sense of the word.

Tr. at 171. Following the hearing, Agnello pleaded guilty to first degree intentional homicide, party to a crime, and was sentenced to life in prison.

¶ 43.   The court of appeals affirmed Agnello's conviction. First, the court of appeals concluded that Agnello waived his right to argue on appeal that the circuit court committed constitutional error under *Rogers* and *Jackson* by permitting the prosecutor to cross-examine Agnello regarding the truth or falsity of his confession. The court of appeals reasoned that defense counsel's relevancy objection "failed to present the trial court with any information concerning either *Rogers* or *Jackson*," *State v. Agnello,* No. 96–3406-CR, unpublished slip op. at 6 (Wis. Ct. App. Mar. 10, 1998), and that Agnello "failed to develop the argument he now

189

makes on appeal beyond a general claim that the evidence was irrelevant." *Id.* at 6.

¶ 44. Second, the court of appeals upheld the circuit court's finding that Agnello's confession was voluntary. *Id.* at 8. The court noted that the State must prove a confession voluntary by a preponderance of the evidence.[6] *Id.* The court rejected Agnello's argument that improper police practices rendered his confession involuntary. *Id.* at 10. The court held that Agnello waived his right to argue on appeal that any allegedly improper police tactics except sleep deprivation rendered his confession involuntary because he failed to raise those issues before the circuit court. *Id.* As to the issue of sleep deprivation, the court of appeals upheld the circuit court's finding that Agnello was "not 'unduly' or 'unintelligibly' fatigued" because it was not clearly contrary to the great weight and clear preponderance of the evidence. *Id.* at 11–12 (quoting Tr. at 170–71).

¶ 45. Judge Fine filed a concurring opinion in which he explained that Agnello's testimony was admissible for purposes other than the confession's truthfulness, such as "to gauge the veracity" of the defendant and to determine why the defendant signed the confession. Slip op. at 3–4 (Fine, J., concurring). According to Judge Fine, *Rogers* does not prohibit such testimony; rather, *Rogers* only precludes courts from

---

[6] In support of this proposition, the court cited *State v. Santiago*, 206 Wis. 2d 3, 28–29, 556 N.W.2d 687 (1996); *State v. Jones*, 192 Wis. 2d 78, 114a, 532 N.W.2d 79 (1995)(*per curiam* on motion for reconsideration); *State v. Rewolinski*, 159 Wis. 2d 1, 16 & n.7, 464 N.W.2d 401 (1990); *State v. Albrecht*, 184 Wis. 2d 287, 301, 516 N.W.2d 776 (Ct. App. 1994); and *State v. Lee*, 175 Wis. 2d 348, 362–64, 499 N.W.2d 250 (Ct. App. 1993).

holding that a confession is voluntary simply because it is true. *Id.* at 3.

## II.

¶ 46. The first issue is whether Agnello's single relevancy objection was sufficient to preserve his right to argue on appeal that the above-quoted line of questioning by the prosecutor violated Agnello's due process rights under *Rogers* and *Jackson*. Based on my review of the record, I conclude that Agnello waived his right to raise this issue on appeal because his sole objection lacked the specificity and timeliness required by Wisconsin law.

¶ 47. The majority correctly stated that "[t]he necessity of lodging an adequate objection to preserve an issue for appeal cannot be overstated." Majority op. at 172. Wisconsin Stat. § 901.03(1)[7] requires that an objection be both specific and timely in order to preserve a challenge to admitted evidence for appeal. It states:

(1) Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

(a) *Objection.* In case the ruling is one admitting evidence, a *timely* objection or motion to strike appears of record, *stating the specific ground* of objection, if the specific ground was not apparent from the context; . . .

§ 901.03(1)(emphasis added). Specific and timely objections are required to allow the circuit court and/or opposing counsel to correct their own errors and "avoid the raising of issues on appeal for the first time." *Bava-*

---

[7] All references to the Wisconsin Statutes are to the 1995–96 version, unless otherwise indicated.

*rian Soccer Club, Inc. v. Pierson*, 36 Wis. 2d 8, 15, 153 N.W.2d 1 (1967). *See also In re Interest of Corey J.G.*, 215 Wis. 2d 395, 405, 572 N.W.2d 845 (1998). The United States Supreme Court has acknowledged that rules requiring adequate objection at the trial court level, which the Court referred to as "contemporaneous-objection rules," may "mak[e] a major contribution to finality in criminal litigation." *Wainwright v. Sykes*, 433 U.S 72, 88 (1977). The Court stated that when a person charged with a crime is undergoing proceedings at the trial court level,

> [t]o the greatest extent possible all issues which bear on this charge should be determined in this proceeding: the accused is in the courtroom, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide. . .the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable, and the contemporaneous-objection rule surely falls within this classification.

*Id.* at 90. Even claims of constitutional right are waived by the failure to object adequately in the circuit court. *State v. Gove*, 148 Wis. 2d 936, 940–41, 437 N.W.2d 218 (1989).

¶ 48.   This court has held that an objection is sufficiently specific if it "reasonably advise[s] the court of the basis for the objection." *Corey J.G.*, 215 Wis. 2d at 405 (quoting *State v. Peters*, 166 Wis. 2d 168, 174, 479 N.W.2d 198 (Ct. App. 1991)). *See also State v. Wedgeworth*, 100 Wis. 2d 514, 528, 302 N.W.2d 810 (1981). "The cardinal principle is that a general objec-

tion if overruled cannot avail the objector on appeal."
*State v. Hoffman*, 240 Wis. 142, 151, 2 N.W.2d 707
(1942). *See also Holmes v. State*, 76 Wis. 2d 259, 271,
251 N.W.2d 56 (1977); *Peters*, 166 Wis. 2d at 174. An
objection on the basis of relevance, without more expla-
nation, is a general objection. *See Cornell v. Barnes*, 26
Wis. 473, 480 (1870); *State v. Boehm*, 127 Wis. 2d 351,
357, 379 N.W.2d 874 (Ct. App. 1985).[8] *See also* 1 *Wig-
more on Evidence*, § 18 (1988). To be timely, "an
objection must be made as soon as the opponent might
reasonably be aware of the objectionable nature of the
testimony." *Holmes*, 76 Wis. 2d at 272. *See also West v.
State*, 74 Wis. 2d 390, 401, 246 N.W.2d 675 (1976);
*Coleman v. State*, 64 Wis. 2d 124, 128, 218 N.W.2d 744
(1974); *Bennett v. State*, 54 Wis. 2d 727, 735, 196
N.W.2d 704 (1972).

¶ 49. Upon examination of the relevant portion of
the transcript, I conclude that Agnello's objection did
not meet the level of specificity and timeliness required
by Wisconsin law. First, Agnello's objection lacked suf-
ficient specificity. As the majority noted, Agnello
argues on appeal that "the circuit court erred under
*Rogers v. Richmond*, 365 U.S. 534 (1961), and *Jackson
v. Denno*, 378 U.S. 368 (1964), by allowing the prosecu-
tor to question Agnello about the truthfulness of his
confession." Majority op. at 171. Agnello claims that his

[8] Other jurisdictions similarly have held that objections on
the basis of relevancy alone are too general to preserve specific
arguments for appeal. *See, e.g., Rowland v. State*, 561 S.W.2d
304, 310 (Ark. 1978); *Singletary v. State*, 390 S.E.2d 611, 612
(Ga. Ct. App. 1990); *People v. Eyler*, 549 N.E.2d 268, 289 (Ill.
1990); *Gambill v. State*, 479 N.E.2d 523, 526 (Ind. 1985); *State v.
Duran*, 496 P.2d 1096, 1098 (N.M. Ct. App. 1972); *State v. Kai-
ser*, 504 N.W.2d 96, 102 (S.D. 1993); *Wilson v. State*, 541 S.W.2d
174, 175 (Tx. Crim. App. 1976).

single, general relevancy objection preserved this issue for appeal. Agnello's objection, however, failed to alert the court to his underlying argument—the basis for the objection. *See Corey J.G.*, 215 Wis. 2d at 405. Agnello did not clarify *why* the evidence was irrelevant to the purposes of a *Miranda-Goodchild* hearing.

¶ 50. Relevance is too broad an evidentiary doctrine to be immediately associated with the truth or falsity of a confession. While evidence may be irrelevant at a *Miranda-Goodchild* hearing because, as Agnello argues, it goes to the truth or falsity of a the confession, *see Lee v. Illinois*, 476 U.S. 530, 547 n.6 (1986), evidence may be irrelevant at such a hearing for any number of other reasons. As such, a relevancy objection, on its own, cannot reasonably be expected to give the court notice that it should consider whether the questions violate due process under the rule of *Rogers* and *Jackson* because they go to truth or falsity. Defense counsel did not make even the briefest mention of *Rogers*, *Jackson*, due process, truthfulness, voluntariness, or any other clarifying reference which might have alerted the circuit court, or opposing counsel, to the basis of the objection. Consequently, I conclude that the objection lacked the specificity required by Wis. Stat. § 901.03(1).

¶ 51. Similarly, I conclude that Agnello's objection was untimely. Defense counsel did not object to the prosecutor's first question which arguably related to truth or falsity of the confession. Likewise, he did not object to the second such question. Instead, defense counsel waited until the prosecutor had asked, and Agnello had answered, *eleven* questions that arguably regarded the confession's truth or falsity before lodging his objection. Even then, defense counsel objected to a question that only obliquely referred to the statement's

truth—the question, "But you and Mr. Stream had planned this killing; is this correct?" Tr. at 91. Therefore, Agnello did not object "as soon as [he] might reasonably be aware of the objectionable nature of the testimony," as is required by Wisconsin law. *Coleman*, 64 Wis. 2d at 129.

¶ 52. The majority concedes that the objection was "not stated with the utmost specificity," majority op. at 176, and that "[t]he addition of a short phrase, such as 'the truthfulness of a confession has no bearing on voluntariness,' would have gone a long way to eliminate any confusion over the nature of the objection." Majority op. at 173. The majority concludes, however, that "the context of the objection and the status of the law in this area gravitate toward a conclusion that Agnello has preserved this issue for appeal." Majority op. at 174.

¶ 53. I disagree with the majority that the "context of the objection" suggested that Agnello's relevancy objection was in any way based on *Rogers* and *Jackson*. Rather, a close inspection of the transcript suggests precisely the opposite: that Agnello was *not* objecting to the questions which arguably violated the *Rogers* and *Jackson* rule. Defense counsel made the "relative" objection after the prosecutor asked, "But you and Mr. Stream had planned this killing; is this correct?" Tr. at 91. At best, this question might indirectly pertain to the truthfulness of Agnello's confession. Before and after this question, however, the prosecutor asked questions which arguably related much more obviously and directly to the truthfulness of the confession. For example, the prosecutor, after asking whether Agnello wrote "this is true" at the bottom of his confession, asked, "And you did that because what is in the statement is true; is that correct?" *Id.* at

90. Later, the prosecutor asked whether the statement was "basically true" and whether there were "facts in there that are true." *Id.* at 93–94. Curiously, defense counsel did not object to any of these questions. Under such circumstances, the circuit court judge could hardly be expected to connect Agnello's isolated objection to the *Rogers* and *Jackson* argument he now presents, without further specification.

¶ 54. The majority also argues that the common occurrence of *Goodchild* hearings coupled with the "lengthy calm in this area of the law," rendered the ground for the objection obvious. Majority op. at 174–75. I disagree. This case is not like *Corey J.G.*, in which this court held that a party's statement, "I have one more motion. I would move to dismiss for lack of establishment of venue," *Corey J.G.*, 215 Wis. 2d at 403, was sufficiently specific because the basis for the objection was obvious. *See id.* at 407–408. In *Corey J.G.*, the motion clearly stated the basis of the objection: venue. *Id.* at 407. The problem in *Corey J.G.* was that the circuit court judge failed to recognize that the issue of venue, when raised in a juvenile delinquency proceeding, required reference to the venue provisions of The Children's Code, Wis. Stat. ch. 48 (1993–94). *Id.*

¶ 55. In this case, in contrast, Agnello's objection did not inform the court of the basis of the objection: that truthfulness is not relevant to a voluntariness inquiry. *See* majority op. at 173. The circuit court judge did not have a chance to apply the law, however long it had been in place, because she was never "reasonably advise[d]" of the basis of the objection, as is required by Wisconsin law. *Corey J.G.*, 215 Wis. 2d at 407. *See also Peters*, 166 Wis. 2d at 174.

¶ 56. The majority also seeks to justify its holding on the basis of the language of *Lee v. Illinois*, 476

U.S. 530, 547 n.6 (1986), which states, "The truth or falsity of the statement is not relevant to the voluntariness inquiry. . . ." Majority op. at 175. The majority's reasoning ignores the underlying purpose of the rules requiring specific and timely objections. The question is not whether the United States Supreme Court has used the term "irrelevant" in describing evidence which goes to the truth or falsity of a confession. Rather, the question is whether the use of the objection "relative [sic]," Tr. at 91, by defense counsel was sufficient to "reasonably advise" the circuit court of the basis for the objection, allowing it to zero in on the source of the problem and remedy any defect. *Corey J.G.*, 215 Wis. 2d at 407. As has already been pointed out, evidence may be irrelevant for any number of reasons. This court should not use the language of *Lee*, and, with the benefit of hindsight, conclude that the objection here was sufficiently specific.

¶ 57.   I am satisfied that Agnello's objection failed to exhibit the degree of specificity and timeliness necessary to preserve the *Rogers* and *Jackson* issue for appeal. In addition, I am convinced that, as Judge Fine recognized and the circuit court found, the testimony at issue was admissible for purposes other than proving the truthfulness of Agnello's confession. Judge Fine stated in his concurring opinion:

> Neither *Rogers* nor any of its progeny, however, holds that inquiry into the circumstances surrounding the confession may not be had, as it was in this case, to gauge the veracity of a defendant who testifies as a witness at the suppression hearing. Thus, Agnello claimed that he signed the confession because he was allegedly "told to" and because he "was extremely tired and scared." How else is a prosecutor to challenge this testimony if not to posit

197

that the real reason Agnello signed the confession was because he wanted to assuage his conscience by getting the matter off his chest?

In my view, the trial court accurately perceived the distinction between holding a confession to be voluntary because it is true (forbidden by *Rogers* and its progeny) and disbelieving a defendant/witness's claim that the confession was coerced because the trial court credits an alternate explanation as to why the defendant confessed-in the aftermath of the crime, he could not suppress his urge to tell the world about the bad things he did. [Citation omitted.]

Slip op. at 3–4 (Fine, J., concurring).

¶ 58. I agree with Judge Fine that Agnello's testimony was admissible to demonstrate Agnello's lack of credibility as a witness. It can be inferred from the context of the prosecutor's questions that they were designed to impeach Agnello by showing the inconsistencies between his direct examination statements and his cross examination statements.[9] Immediately before the cross examination questions at issue, Agnello was asked during his direct examination why he had signed the confession. Agnello replied, "Because I was there for so long I was tired. They told me that I was never going [to] step foot on the outside again so I signed it and hoped everything would be over." Tr. at 90. Understandably, the prosecutor then attempted to impeach Agnello by eliciting testimony that would demonstrate that Agnello had other motives for signing his confession. When viewed in context, it is clear that the question asked by the prosecutor near the

---

[9] *See* Wis. Stat. § 906.11(2), which provides in part, "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility."

beginning of cross examination, "And you [signed the statement] because what is in the statement is true; is that correct," Tr. at 90, for example, was intended to get at *why* Agnello signed the confession, not whether the confession was true. Indeed, Agnello's answer reveals that he himself interpreted the question in this way; he answered, "No. Because I was extremely tired and scared." Tr. at 90.

¶ 59. Moreover, a circuit court may examine the manner in which a witness answers questions to resolve a witness's contradictory statements. *See State v. Owens*, 148 Wis. 2d 922, 930, 436 N.W.2d 869 (1989). There is no question that the circuit court viewed the exchange at issue as relevant to Agnello's credibility. *See* Tr. at 91.

¶ 60. The transcript of the *Miranda-Goodchild* hearing shows that the circuit court did not consider the confession's truthfulness in its voluntariness determination. Therefore, the circuit court did not violate the rule of *Rogers* and *Jackson* in determining that the confession was voluntary. *See U.S. v. Kreczmer*, 636 F.2d 108, 110–11 (5th Cir. 1981); *Gilreath v. Mitchell*, 705 F.2d 109, 110 (4th Cir. 1983). Although the court found Agnello's testimony to lack credibility, it is not true, as the majority contends, that the line of questioning at issue "played a sizable role in the circuit court's ruling," majority op. at 178, or that "the transcript reveals that the only times Agnello's memory could be categorized as selective were when the prosecutor sought information related to the truthfulness of his confession." Majority op. at 179. The circuit court based its judgment as to Agnello's credibility on several factors.[10] The court never indicated the weight that it

---

[10] The circuit court stated:

gave Agnello's "selective memory" in its credibility assessment, much less whether it "played a sizeable role" in that assessment. Arguably, the numerous differences between Agnello's testimony and the testimony of police detectives played the largest role in the circuit court's determination of credibility. Almost all of these discrepancies in testimony arose in portions of the hearing other than the questioning at issue.[11]

> [I]n my judgment the police officer and detective witnesses in this case outweigh in the credibility contest. Mr. Agnello had very little credibility when he testified on his own behalf as evidenced by the manner in which he testified. As evidenced by his very selective memory in this case and also as evidenced by his past criminal history which is in the record through the statement which is in the record here itself which casts some doubt on his own credibility. And also his credibility with respect to his position that he did in fact request a lawyer is contradicted by the fact that he signed a waiver and that he gave a statement and signed the statement at various points.

Tr. at 169–70. The court also stated that it didn't "buy" Agnello's testimony that Detective Olson put pressure on his hands during questioning because Olson had testified otherwise. *Id.* at 171.

[11] Four examples illustrate the pervasiveness in the record of discrepancies between Agnello's testimony and that of the detectives. First, Agnello testified that Detectives Burems and Moore came into the interrogation room about three to five minutes after he got there and questioned him all night, but Moore testified that the questioning began at 6:00 a.m. and lasted until 8:20 a.m., and that before that, Agnello was in the interview room alone and had the opportunity to sleep. *See* Tr. at 81–82, 151–53, 155. Second, Agnello testified that none of the detectives informed him of his *Miranda* rights, whereas Detectives Moore and Temp both testified that Agnello had received his rights and Temp indicated that Agnello had signed a written waiver (later admitted into evidence). *See* Tr. at 6, 8, 83, 86, 152. Third, Agnello claimed that Detective Olson grabbed or pressed on his hands several times during questioning, but both Olson

200

¶ 61.  In sum, I would hold that Agnello's objection failed because it lacked the specificity and timeliness required by Wis. Stat. § 901.03(1)(1995–96). The context of this case did not create an environment where the grounds for the objection were obvious. In addition, the objection was a general objection and the testimony elicited was admissible for purposes other than the confession's truthfulness. Therefore, I conclude that Agnello's objection was insufficient to preserve the *Rogers* and *Jackson* issue for appeal.

### III.

¶ 62.  The majority concludes that this court should require the State to prove that a defendant's confession was voluntary by a preponderance of the evidence. *See* majority op. at 182. I disagree. I see no reason to depart from the long line of precedent establishing the rule that the State must prove voluntariness beyond a reasonable doubt.

¶ 63.  First, contrary to the majority's view, Wisconsin has long used a reasonable doubt standard to determine voluntariness. In *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 264–65, 133 N.W.2d 753 (1965), this court announced that "[t]he state shall have the burden of proving voluntariness beyond a reasonable doubt." Following *Goodchild*, this court has consistently held that the State's burden in proving

and Temp testified that neither of them had ever touched Agnello's hands. *See* Tr. at 89, 144, 148–49. Finally, Agnello testified that he had requested a lawyer several times and had either been ignored or denied a lawyer by all detectives, while Moore, Temp, and Olson all testified that Agnello never once asked for an attorney. *See* Tr. at 20, 83–84, 86, 94–95, 148–49, 153.

voluntariness is beyond a reasonable doubt.[12] *See, e.g., State v. Mitchell*, 167 Wis. 2d 672, 696, 482 N.W.2d 364 (1992); *Owens*, 148 Wis. 2d at 933–34; *Johnson v. State*, 75 Wis. 2d 344, 352, 249 N.W.2d 593 (1977); *Blaszke v. State*, 69 Wis. 2d 81, 86, 230 N.W.2d 133 (1975); *Norwood v. State*, 74 Wis. 2d 343, 363, 246 N.W.2d 801 (1976); *State v. Hernandez*, 61 Wis. 2d 253, 258, 212 N.W.2d 118 (1973).

¶ 64.  In order to remain faithful to the doctrine of *stare decisis*, this court should adhere to this long line of cases. Just last year, this court expounded on the importance of *stare decisis*, stating that application of the doctrine "is the preferred course." *State v. Ferron*, 219 Wis. 2d 481, 504, 579 N.W.2d 654 (1998) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). When established legal precedent "is open to revision in every case, 'deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results.' " *Citizens Utility Bd. v. Klauser*, 194 Wis. 2d 484, 513, 534 N.W.2d 608 (1995) (Abrahamson, J., dissenting) (citation omitted). Consequently, this court has held that "any departure from the doctrine of *stare decisis* demands special justification." *Ferron*, 219 Wis. 2d at 504 (quoting *Arizona v. Rumsey*, 467 U.S. 203, 212 (1984)). The majority has failed to provide any "special justification" for its abandonment of the Wisconsin precedent in this area.

---

[12] As the majority recognizes, *State v. Albrecht*, 184 Wis. 2d 287, 301, 516 N.W.2d 776 (Ct. App. 1994), misstated the law at the time when it held that the State must prove voluntariness by a preponderance of the evidence. *See* majority op. at 180 n.11. *Albrecht* incorrectly relied on *State v. Rewolinski*, 159 Wis. 2d 1, 16 n.7, 464 N.W.2d 401 (1990), a case which set forth a preponderance standard as the burden of proof in a Fourth Amendment search and seizure suppression hearing.

¶ 65. The fact that the United States Supreme Court has ruled that voluntariness need only be proved by a preponderance of the evidence, *see Lego v. Twomey*, 404 U.S. 477, 489 (1972), does not provide the "special justification" necessary for this court to cast aside Wisconsin's well-settled rule that voluntariness must be proved beyond a reasonable doubt. As the Court recognized in *Lego*, "Of course, the States are free, pursuant to their own law, to adopt a higher standard. They may indeed differ as to the appropriate resolution of the values they find at stake." *Lego*, 404 U.S. at 489. The United States Supreme Court specifically recognized that Wisconsin, in *Goodchild*, had already resolved the question differently. *Id.* at 479 n.1, 489 n.17. In *Goodchild*, this court carefully considered the appropriate procedure for voluntariness determinations in Wisconsin, taking the Wisconsin Constitution into account. *See Goodchild*, 27 Wis. 2d at 258–265. We adopted the "orthodox procedure," and in doing so, determined that the State must prove voluntariness beyond a reasonable doubt. *Id.* at 264–65. This court may afford greater protection to a person's liberties under the Wisconsin Constitution than is afforded by the federal constitution and we have done so in the past. *See State v. Hansford*, 219 Wis. 2d 226, 241, 580 N.W.2d 171 (1998); *Hoyer v. State*, 180 Wis. 407, 415, 193 N.W.2d 89 (1923); *Carpenter v. Dane County*, 9 Wis. 249, 251 (1859). To the extent that the decision in *Goodchild* was based upon the Wisconsin Constitution, it is not affected by *Lego*, which was decided under the federal constitution. *See Hansford*, 219 Wis. 2d at 241.

¶ 66. Further, the majority offers no sound rationale as to why this court should forgo over thirty years of precedent merely to "align[ ] the burden in voluntariness determinations with the burdens of other pre-trial

constitutional inquiries." Majority op. at 181. Although both the majority and the court of appeals cite several cases involving *Miranda* inquiries in which a preponderance of the evidence standard was applied, *see* majority op. at 181, slip op. at 8–9, it is well-settled law that a *Miranda* inquiry is entirely different from a voluntariness inquiry, even though a court may conduct both inquiries in the same hearing. *See Roney v. State*, 44 Wis. 2d 522, 534, 171 N.W.2d 400 (1969). As we stated in *Roney*, "A confession can be constitutionally antiseptic under *Miranda* in that it arises neither from interrogation nor custody, but can be involuntary because of coercive circumstances to which the police are not parties. Accordingly, the satisfaction of the *Miranda* rule does not ipso facto satisfy the question of voluntariness. . . ." *Id.* at 533. The *Miranda* rule is a prophylactic, judicially-created rule which "may be triggered even in the absence of a Fifth Amendment violation," *Oregon v. Elstad*, 470 U.S. 298, 306–07 (1983), while the requirement that a confession must be voluntary derives directly from the Fifth Amendment itself.[13] As such, this court's holdings as to the burden of proof in one inquiry should not affect the other.[14]

---

[13] The Fifth Amendment provides: "No person. . .shall be compelled in any criminal case to be a witness against himself." The Fourteenth Amendment requires states to recognize the Fifth Amendment privilege against self-incrimination. *Malloy v. Hogan*, 378 U.S. 1, 3 (1978). Article I, section 8 of the Wisconsin Constitution also prohibits compelled self-incrimination.

[14] Recently, this court held that the State must bear the burden of proof on the issue of "custodial interrogation" in a *Miranda* inquiry. *See State v. Armstrong*, 223 Wis. 2d 331, 347 (1999). We based our holding in part on the fact that the burden in voluntariness determinations is on the State. *See id.* at

¶ 67. In contrast, there is good reason, beyond adherence to the doctrine of *stare decisis*, for maintaining the higher burden of proof: often, the only strong evidence the State may have in a case is the defendant's confession. Without that evidence, the State most likely will not prosecute the case. Cases such as *Rogers* and *Jackson* protect a defendant from coercive tactics that might be used to secure a confession, by requiring that a court find that any confession that was obtained through impermissibly coercive tactics was an involuntary one and should be suppressed. Maintaining the burden at beyond a reasonable doubt holds the State to a higher level of accountability and scrutiny.

¶ 68. Accordingly, I conclude that this court should not lower the State's burden relating to voluntariness determinations because it would overturn over thirty years of precedent and because sound public policy supports maintaining the beyond a reasonable doubt burden. Despite the burden adopted by the court of appeals, because the circuit court properly applied the beyond a reasonable doubt standard, I conclude that the court of appeals' determination that Agnello's statement was a voluntary one should be affirmed.

346–47. Allocation of the burden of proof presents a very different issue than determining the substantive standard of proof, however. Also, this court had never decided previously to *Armstrong* which party bore the burden of establishing the occurrence of a "custodial interrogation." *Id.* at 345. In contrast, there is a line of cases stretching back over thirty years holding that the State must prove voluntariness beyond a reasonable doubt.

¶ 69. Finally, I conclude that Agnello, at the *Miranda-Goodchild* hearing, adequately raised the issue of whether police tactics other than sleep deprivation impaired the voluntariness of his confession. Applying the appropriate standard of review, I would uphold the circuit court's determination that Agnello's statement was voluntary beyond a reasonable doubt.

¶ 70. Agnello argued on appeal that the police used improper tactics in questioning him, including: (1) handcuffing Agnello to the interrogation room wall; (2) lengthy questioning; (3) isolation; (4) sleep deprivation; and (5) food deprivation. Slip op. at 10–11. The court of appeals refused to consider any of these alleged tactics except sleep deprivation, holding that Agnello waived his right to raise the other tactics by failing to raise them at the circuit court level. I disagree.

¶ 71. During his *Miranda-Goodchild* hearing, Agnello made offers of proof regarding all of the allegedly coercive police tactics which he raises on appeal.[15] Moreover, during his closing argument, counsel for Agnello argued that "I think the *totality of the circumstances* here also show that the confession itself was simply coercive circumstances." Tr. at 162 (emphasis added). While counsel for Agnello highlighted sleep deprivation as arguably the most egregious offense,[16]

---

[15] Agnello testified that he was placed in an interrogation room and occasionally was handcuffed to its wall, that a detective grabbed his hand during questioning, that he was subjected to long periods of questioning, that he was threatened by police, that he received a hamburger, and that he was tired. *See* Tr. at 81–90.

[16] Counsel for Agnello also specifically argued that the fact that police had "gone on so long with their questioning" contributed to the coercive circumstances. *Id.*

he also preserved his right to raise on appeal other tactics used by specifying that the totality of the circumstances resulted in coercion.

¶ 72. Next, I consider whether the circuit court properly found that Agnello's confession was voluntary. In determining whether a confession was voluntary a court must look at the totality of the circumstances in order to determine whether the defendant was the "victim of a conspicuously unequal confrontation in which the pressures brought to bear on him by representatives of the state exceed[ed] the defendant's ability to resist." *State v. Clappes*, 136 Wis. 2d 222, 236, 401 N.W.2d 759 (1987) (quoting *State v. Hoyt*, 21 Wis. 2d 284, 308, 128 N.W.2d 645 (1964)). The court must balance the defendant's personal characteristics against the tactics employed by the police in procuring the confession. *Id.* However, "in order to justify a finding of involuntariness, there must be some affirmative evidence of improper police practices deliberately used to procure a confession." *Id.* at 239. If there is no such affirmative evidence, the analysis ends; the confession is voluntary. *Id.* at 239–40, 245.

¶ 73. This court will not set aside the circuit court's findings of evidentiary or historical fact unless we determine that they are contrary to the great weight and clear preponderance of the evidence. *Id.* at 235. *See also Norwood*, 74 Wis. 2d at 363–64. Consequently, any conflicts in the testimony regarding the circumstances surrounding the confession must be resolved in favor of the circuit court's findings. *Norwood*, 74 Wis. 2d at 364; *Clappes*, 136 Wis. 2d at 235. We review independently the application of constitutional principles to the circuit court's findings of fact. *Clappes*, 136 Wis. 2d at 235.

¶ 74.    In this case, the circuit court found "beyond a reasonable doubt under all of the circumstances" that Agnello's confession "was not coerced in any sense of the word." Tr. at 171. The court made a specific finding that the number of hours that Agnello was awake did not "constitute such undue fatigue as to render the statement involuntary." Tr. at 170–171. In addition, the court declined to accept as true Agnello's assertion that the police put pressure on his hand during questioning. *Id.* at 171. The court found the police officers' testimony more credible in general and also accepted the police detectives' version of events "over Mr. Agnello's version in this case under all the facts and circumstances that were elicited here." *Id.* at 169, 171. None of the police detectives testified to circumstances which even remotely could be characterized as coercive. Based on my review of the transcript, I conclude that these findings of the circuit court are supported by the great weight and clear preponderance of the evidence.

¶ 75.    Because the circuit court properly found that no coercion existed, there is no need to balance Agnello's personal characteristics against the police tactics used. *See Clappes*, 136 Wis. 2d at 236, 239–40, 245. The circuit court correctly determined that under the totality of the circumstances, Agnello's confession was voluntary.[17]

¶ 76.    To summarize, I conclude that Agnello waived his right to review of whether the prosecutor's line of questioning at the *Miranda-Goodchild* hearing violated his due process rights under the rule of *Rogers* and *Jackson*. Based on well-established Wisconsin pre-

---

[17] I again note that the court of appeals also upheld the circuit court's determination that Agnello's confession was voluntary. *See* slip op. at 12.

cedent, I am convinced that the State must prove the voluntariness of a confession beyond a reasonable doubt. Further, I conclude that Agnello preserved his right to raise on appeal any police practices used during his questioning by specifying that the totality of the circumstances resulted in coercion. Finally, I find that the circuit court properly determined that Agnello's confession was voluntary. Accordingly, I would affirm the court of appeals.

¶ 77.  For all of these reasons, I respectfully dissent.

¶ 78.  I am authorized to state that Justice DONALD W. STEINMETZ and Justice JON P. WILCOX join this dissent.